DAVID ZARMI
California Bar No. 245636
8950 W Olympic Blvd., Ste. 533
Beverly Hills, CA 90211
310-841-6455
davidzarmi@gmail.com

*Attorney for Defendants*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

CARNEL ROGERS, by and through his Successor in Interest, Carmela Rogers; and CARMELA ROGERS, an individual,

        Plaintiffs,

   vs.

LAWNDALE HEALTHCARE & WELLNESS CENTRE, LLC dba LAWNDALE HEALTHCARE & WELLNESS CENTRE; BRIUS, LLC; ENSEMBLE HEALTHCARE, LLC; GRANITE HILLS HEALTHCARE & WELLNESS CENTRE, LLC; PACIFIC REHABILITATION & WELLNESS CENTRE, LP; PACIFIC WELLNESS GP, LLC; and DOES 1-50,

        Defendants.

Case No. 2:21-cv-3922

**NOTICE OF REMOVAL OF CIVIL ACTION**

**[Re: Los Angeles County Superior Court Case No. 21STCV13152]**

      COME NOW, Defendants LAWNDALE HEALTHCARE & WELLNESS CENTRE, LLC dba LAWNDALE HEALTHCARE & WELLNESS CENTRE; BRIUS, LLC; ENSEMBLE HEALTHCARE, LLC; GRANITE HILLS HEALTHCARE & WELLNESS CENTRE, LLC; PACIFIC REHABILITATION & WELLNESS CENTRE, LP; and PACIFIC WELLNESS GP, LLC (collectively, "Defendants"), by and through their undersigned counsel, hereby remove this action from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the

Central District of California, Western Division, reserving all defenses and reserving all objections to venue based on 42 U.S.C. § 247d-6d(e)(1), pursuant to 28 U.S.C. §§ 1441 and 1446, on the following grounds:

## I.     STATEMENT OF THE CASE

1.     This action was filed in the Superior Court of the County of Los Angeles, California as Case No. 21STCV13152 on April 23, 2021.  (Ex. A, Summons & Complaint.)

2.     Defendants were collectively served with the Summons and Complaint on April 9, 2021.  (Ex. A, Summons & Complaint.)  Accordingly, this Notice of Removal is timely.  *See* 28 U.S.C. § 1446(b); Fed. R. Civ. Proc. 6(a)(1).

3.     The Complaint asserts causes of action for alleged elder abuse and neglect, wrongful death, resulting from alleged misconduct by a covered person in the administration of a covered countermeasure under the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. §§ 247d-6d(d), 247d-6e.  (*See, e.g.*, Ex. A, Complaint at 2-4, 11-13, 16-21.)

4.     More specifically, Plaintiffs claim that Defendants engaged in negligent, willful and/or reckless conduct in the care rendered to Carnel Rogers ("the Decedent") in relation to exposure, diagnosis, and treatment of COVID-19 and in the distribution, administration, or use of medical countermeasures, like COVID-19 testing and personal protective equipment (PPE), to prevent the spread of COVID-19 within the skilled nursing facility (SNF) for the elderly known as Lawndale Healthcare and Wellness Centre ("Lawndale"), where the Decedent resided.  (*See, e.g.*, Ex. A, Complaint at 2-4, 11-13, 16-21.)

5.     The Complaint seeks damages including compensation for general damages, special damages, punitive damages, costs of suit, and attorney's fees.  (Ex. A, Complaint at 29.)

## II.     PROCEDURAL REQUIREMENTS

6.     This notice is filed on behalf of Defendants in the above-styled case pursuant to 28 U.S.C. § 1446(b)(2)(A).

7.      Concurrent with the filing of this Notice or promptly thereafter, Defendants are serving this Notice of Removal on all other parties pursuant to § 1446(d).

8.      Pursuant to § 1446(a), copies of pleadings and documents from the Superior Court for the County of Orange served upon or provided to Defendants are attached as Exhibit A.

### III.     FEDERAL QUESTION JURISDICTION UNDER 28 U.S.C. § 1441(a)

9.      This case is removable under 28 U.S.C.A. § 1441(a) on the basis of original jurisdiction because Plaintiffs assert a claim arising under federal law withing the meaning of § 1331.

10.     On its face, the allegations contained in the Complaint reflect that a "covered person" was involved in "recommended activity" relative to a "covered countermeasure" and therefore presents a federal question under the PREP Act, 42 U.S.C. §§ 247d-6d, 247d-6e.

11.     As such, Congress provided an exclusive remedy for the substance of the allegations, and relief sought in the Complaint and Federal law expressly pre-empts state law for purposes of federal question jurisdiction.  §§ 247d-6d, 247d-6e.

12.     Federal courts have found "complete preemption" where a federal statute expressly preempts state law and creates an exclusive federal remedy for preempted state claims.  *See, e.g.*, *Fossen v. Blue Cross & Blue Shield of Mon., Inc.*, 660 F.3d 1102, 1107 (9th Cir. 2011); *In re WTC Disaster Site*, 414 F.3d 352, 380 (2d Cir. 2005); *Spear Marketing, Inc. v. Bancorp South Bank*, 791 F.3d 586 (5th Cir. 2015); *Nott v. Aetna U.S. Healthcare, Inc.*, 303 F.Supp.2d 565 (E.D. Pa. 2004).

13.     Here, as set forth below, Defendant asserts that Plaintiffs' claims are completely preempted by the PREP Act sections found at §§ 247d-6d and 247d-6e.  *See Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 253 (2011) (Sotomayor, J., dissenting) (where the majority found the National Childhood Vaccine Injury Act preempted state law, Justices Sotomayor & Ginsburg further analyzed that the PREP Act unequivocally demonstrated intent to completely preempt state law through its use of "categorical (e.g., 'all') and/or declarative language (e.g., 'shall')").

14.     Under § 247d-6d(a), a "covered person" is afforded broad immunity for all "claims for loss arising out of, relating to, or resulting from" the "administration" or "use" of a "covered

countermeasure" as those terms are defined by that section, provided the Secretary of the Department of Health and Human Services (HHS) issues a declaration to that effect.

15.     For all claims barred by immunity under § 247d-6d that do not assert "willful misconduct," the exclusive remedy for relief is established under § 247d-6e, which permits an individual to make a claim for benefits through the Countermeasures Injury Compensation Program, also known as the Fund, for a "covered injury directly caused by the administration or use of a covered countermeasure."  In fact, and for purposes of illustrating Congress's intent to address all claims, even a claimant alleging "willful misconduct" must first apply for benefits through the Fund under § 247d-6e before bringing an action under § 247d-6d(d).  § 247d-6e(d)(1).  Further, even where a plaintiff has alleged willful misconduct and exhausted his remedies relative to the Fund, such plaintiff is limited to "*an exclusive Federal cause of action*" for willful misconduct "maintained only in the United States District Court for the District of Columbia."  § 247d-6d(d)-(e)(1) (emphasis added).

16.     Moreover, under § 247d-6d(b)(8), state law that "is different from, or in conflict with, any requirement applicable [for immunity]" is expressly preempted.

17.     Therefore, Congress has clearly manifested the intent to preempt state law with respect to claims that invoke PREP Act immunity and to create an exclusive federal remedy for such preempted claims, thereby "completely preempting" state law for purposes of federal question jurisdiction.  *See Bruesewitz*, 562 U.S. at 253.

18.     Here, as alleged in the Complaint, Defendants are "covered person[s]" in that Lawndale is a SNF licensed by the State of California and the remaining defendants are alleged to have "operated, managed, or staffed" the Lawndale SNF.  (Ex. A, Complaint, at 6-7.)  Further, Lawndale, as well as its employees and affiliates are "covered persons" because each meet the requirements of a "program planner" of countermeasures under the PREP Act and are "qualified persons who prescribed, administered or dispensed" a countermeasure under the PREP Act.  This was confirmed by the Office of the General Counsel, HHS in an opinion letter dated August 14, 2020, stating that senior living communities administering covered countermeasures are "covered persons," entitled to immunity under

the PREP Act by virtue of their status as both "program planners" and "qualified persons." (Attached as Exhibit B.)

19.     Plaintiffs' claim "arises out of, relates to, or results from" the administration and use of a "covered countermeasure" obtained through a "means of distribution," to a "population," and within a "geographic area," or reasonably believed so by Defendant, for the purpose of treating, diagnosing, curing, preventing, or mitigating COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, as such terms are defined within the PREP Act, §§ 247d-6d, 247d-6e, the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198 (Mar. 17, 2020), amended by 85 Fed. Reg. 21012 (Apr. 15, 2020), and all corresponding amendments, regulations, and interpretational case law.

20.     At the time of the allegations set forth in the Complaint, and based on such allegations, Defendants were acting as "program planner[s]" that supervised the infection control policy program, under which FDA-approved personal protective equipment including, inter alia, N95 respirators, face shields, and gowns as well as diagnostic countermeasures were distributed and administered to the Decedent and the Lawndale staff in an effort to diagnose, mitigate, and prevent COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom. Further, Defendants' employees and affiliates were acting as employees of "program planner[s]" that supervised and administered the infection control program that provided and used FDA-approved countermeasures on the Decedent and the Lawndale staff in an effort to diagnose and mitigate COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom.

21.     At the time of the allegations set forth in the Complaint, and based on such allegations, Defendants' employees and affiliates were acting as "qualified persons" because Defendants' employees were authorized to administer, deliver, and use FDA-covered countermeasures, like personal protective equipment and FDA-approved COVID-19 devices, medication, and diagnostic tests to diagnose and prevent COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom.

22.     At the time of the allegations set forth in the Complaint, and based on such allegations, Defendants were engaged in the management and operation of countermeasure programs in an effort to diagnose and prevent COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom to a "population" and within a "geographic area" specified by the Declaration under the PREP Act for Medical Countermeasures against COVID-19, 85 Fed. Reg. 15198 (Mar. 17, 2020), and all amendments thereto ("Declaration"), or reasonably believed so by Defendants.  Likewise, Defendants' employees and affiliates were physically providing the countermeasures to the Decedent and using the countermeasures in an effort to diagnose and prevent COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom to a "population" and within a "geographic area" specified by the Declaration, and all amendments thereto, or reasonably believed so by Defendants.  The HHS Secretary confirmed the same in a guidance letter dated August 31, 2020 that diagnostic testing for COVID-19 in senior living communities qualifies as a "covered countermeasure" triggering PREP Act immunity. (Attached as Exhibit C.)[1]

23.     At the time of the allegations set forth in the Complaint, the respirators and PPE used by Defendants were approved by the FDA as a qualified pandemic or epidemic product and were respiratory protective devices approved by the National Institute for Occupational Safety and Health under 42 CFR part 84, and were administered, delivered, distributed, and dispensed in accordance with the public health and medical response of the State of California or reasonably believed so by Defendants.  As noted above, Plaintiffs' claim "arises out of, relates to, or results from" the administration and use of such "covered countermeasures."

24.     On January 8, 2021, HHS General Counsel issued new controlling authority (hereinafter "AO 21-01," attached as Exhibit D)[2] confirming unequivocally that: (1) the PREP Act is invoked by

---

[1] Also available at https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/prep-act-coverage-for-screening-in-congregate-settings.pdf.

[2] Also available at https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/2101081078-jo-advisory-opinion-prep-act-complete-preemption-01-08-2021-final-hhs-web.pdf.

allegations like those in the Complaint, including alleged inaction or failure to act; (2) the PREP Act is a "'Complete Preemption' Statute" which confers federal question removal jurisdiction under 28 U.S.C. § 1441(a); and (3) as discussed in more detail below, federal jurisdiction is separately conferred in such cases under the doctrine articulated by the Supreme Court in *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), because "ordaining the metes and bounds of PREP Act protection in the context of a national health emergency necessarily means that the case belongs in federal court." (Emphasis added.)

25.    AO 21-01 unequivocally states that "[t]he PREP Act is a 'Complete Preemption' Statute," because it establishes both a federal and administrative cause of action as the only viable claim, and vests exclusive jurisdiction in federal court."  (Ex. D at 2.)

26.    AO 21-01 rejects the notion that immunity under the PREP Act requires actual "use" of a covered countermeasure. Specifically, AO 21-01 provides that "this 'black and white' view clashes with the plain language of the PREP Act, which extends immunity to anything 'relating to' the administration of a covered countermeasure."  (Ex. D at 3.)

27.    Specifically, AO 21-01 provides that "[p]rioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration[']s liability protections.  There can potentially be other situations where a conscious decision ***not*** to use a covered countermeasure could relate to the administration of the countermeasure."  (Ex. D at 3, emphasis added.)  Thus, "program planners" fall within the set of "covered persons" under the PREP Act and the "decision-making that leads to the ***non-use*** of covered countermeasures by certain individuals is the grist of program planning, and is expressly covered by PREP Act."  (*Id.* at 4, emphasis added.)

28.    In the fourth amendment to the Declaration, the HHS Secretary expressly addressed ***inaction***, as the Secretary defined "administration" of covered countermeasures to include not only physical use, but ***non-use***, such as activities and decisions, as well as management and operation, of countermeasure programs generally. This distinction makes "explicit that there can be situations where

Defendants' Notice of Removal of Civil Action

***not administering*** a covered countermeasure to a particular individual can fall within the PREP Act and this Declaration's liability protections."  85 Fed. Reg. 79190, 79194 (emphasis added) & 79197 (examples of such situations) (Dec. 9, 2020).

29.     Because Defendants are Covered Persons and because Plaintiffs' allegations concern Defendant's conscious decisions to use or not use covered countermeasures, including "implementing policies and procedures relating to infectious diseases" and PPE, Plaintiffs' claims squarely fall within the PREP Act.

30.     As confirmed in AO 21-01, when the PREP Act is triggered, complete preemption attaches.  Indeed, "[t]he *sine qua non* of a statute that completely preempts is that it establishes either a federal cause of action, administrative or judicial, as the only viable claim or vests exclusive jurisdiction in a federal court.  The PREP Act does both."  (Ex. D at 2.)

31.     AO 21-01 is binding on this court, as the HHS Secretary incorporated all HHS Advisory Opinions pertaining to COVID-19 into the PREP Act's implementing Declaration itself and proclaimed that the Declaration "must" be construed in accordance with them.  85 Fed. Reg. at 79191.  As such, the HHS Advisory Opinions are no longer "advisory," as they now have the same "controlling weight" as the Declaration and the PREP Act itself.  Where Congress has expressly delegated interpretative authority to an agency, that agency's interpretative proclamations are controlling on the federal courts. *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-44 (1984).  To avoid any doubt on this point, the Secretary amended the Declaration for a fifth time, confirming again in the Declaration itself that the PREP Act is a complete preemption statute.  86 Fed. Reg. 7872, 7873-74 (Feb. 2, 2021).[3]  Congress has reinforced the Secretary's ultimate authority over these matters concerning the PREP Act, and warns that "[n]o court . . . shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under [the PREP Act]."  42 U.S.C. § 247d-6d(b)(1), (4) & (7).  Thus, the

---

[3] Notably, this Fifth Amendment was done under the new Biden Administration, meaning that the HHS's interpretation of the PREP Act is nonpolitical.

Defendants' Notice of Removal of Civil Action

federal courts must follow AO 21-01's controlling authority that the PREP Act is a complete preemption statute.

32.     AO 21-01 itself was preceded by other HHS authorities that have provided guidance to the courts in construing the PREP Act.  For example, Advisory Opinion 20-04 confirms that any individual or organization can potentially be a program planner and receive PREP Act coverage--"even grocery stores, universities, private businesses, places of worship, and private transportation providers."[4] And, as described above, HHS issued separate guidance letters specifically confirming that residential care facilities for the elderly are program planners or qualified persons under the PREP Act when they administer or use diagnostic testing and other covered countermeasures.  (*See* n.1, *ante*.)

33.     In a recent case with allegations similar to the instant one, and following a motion to remove from California state court, the court in *Garcia v. Welltower OpCo Group LLC*, 2021 U.S. Dist. LEXIS 25738 (C.D. Cal. Feb. 10, 2021) denied the plaintiff's motion to remand and granted the defendants' motion to dismiss.  The court there found that the plaintiff's allegations included the "use and misuse of PPE" and detailed "infection control measures and procedures including symptom checking, staff monitoring and screening, and limiting visitation."  (*Id.* at *8.)  Specifically, the Court held: (1) "[t]he acts and omissions alleged by Plaintiffs appear almost verbatim in the January 8, 2021 Advisory Opinion" and, accordingly, the PREP Act applied to the plaintiffs' claims (*id.* at *14); (2) "because the OGC stated [in the January 8, 2021 Advisory Opinion] that the PREP Act is a complete preemption statute . . . an adequate basis for federal question jurisdiction exists" (*id.*); (3) prior federal opinions holding that the PREP Act did not provide a basis for federal question jurisdiction preceded more recent guidance from the OGC (Advisory Opinion published January 8, 2021), which established that "when a party attempts to comply with federal guidelines--in this case the COVID-19 pandemic-- the PREP Act would provide complete preemption" (*id.* at 10); and (4) "While the Court acknowledges that certain allegations relate to a failure to abide by local or federal health guidelines, these allegations

---

[4] Available at https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/AO%204.2_Updated_FINAL_SIGNED_10.23.20.pdf.

Defendants' Notice of Removal of Civil Action

related to momentary lapses.  Taken as true, all Plaintiffs' FAC discloses are possible unsuccessful attempts at compliance with federal or state guidelines--something which the PREP Act, the Declaration, and the January 8, 2021 Advisory Opinion cover."  (*Id.* at 14.)

34.    Furthermore, since the *Garcia* decision, the HHS Secretary amended the Declaration a sixth time, reaffirming, "The plain language of the PREP Act makes clear that there is preemption of state law as described above."  86 Fed. Reg. 9516, 9517 (Feb. 16, 2021).[5]

35.    Despite Plaintiffs' assertion of state law claims, because the PREP Act offers complete preemption, jurisdiction over the claims is exclusively federal.  *See Beneficial Nat. Bank v. Anderson,* 539 U.S. 1, 8 (2003) ("[w]hen the federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law").  Thus, under preemption doctrine alone, removal is proper under 28 U.S.C. § 1441(a).

36.    In addition to complete preemption, AO 21-01 confirms that the PREP Act confers separate, independent grounds for federal question jurisdiction under the *Grable* doctrine.  AO 21-01 highlights the Secretary's conclusion in the Declaration that "there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of [the Grable doctrine] in having a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private sector entities."  (Ex. D at 5 (quoting 85 Fed. Reg. at 79197).)

37.    The Advisory Opinion's interpretation of *Grable* is consistent with the Supreme Court's long-standing rule "that in certain cases federal question jurisdiction will lie over state-law claims that implicate federal issues."  545 U.S. at 312.  "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  *Id.*

---

[5] *See* n.3, *ante*, regarding the nonpolitical nature of the HHS interpretation.

38.     The *Grable* Court determined that no single, precise test exists for determining whether an embedded federal issue exists, but that, in general, a two-step process exists for determining whether a state law claim "arises under" federal law: (1) the state law claim must necessarily raise a stated federal issue that is actually disputed and substantial; and (2) federal courts must be able to entertain the state law claims "without disturbing a congressionally approved balance of state and federal judicial responsibilities."  545 U.S. at 314.  Here, both prongs are satisfied.

39.     First, Plaintiffs bring claims as a result for Defendant's alleged use or administration (or nonuse or non-administration) of covered countermeasures in connection with the care and treatment of the Decedent, which necessarily implicates disputed and substantial federal issues.  *See* 42 U.S.C. § 247d-6d.

40.     Second, as confirmed by the Advisory Opinion and the Declaration, the PREP Act expresses a clear intention to supersede and preempt state control of the very issues raised by Plaintiffs, i.e., issues concerning Defendant's decisions to use or not use covered countermeasures, including the use or non-use of PPE.  A substantial and disputed federal issue regarding the application of the PREP Act to Plaintiffs' claims therefore necessarily exists and must be resolved by this Court to ensure the uniform and appropriate application of the PREP Act.

41.     Courts have long recognized federal jurisdiction under the *Grable* doctrine.  *See, e.g.*, *McKay v. City & Cty. of San Francisco*, 2016 U.S. Dist. LEXIS 178436, at *13-14 (N.D. Cal. Dec. 23, 2016) (finding federal jurisdiction under *Grable* where plaintiff's request that court enjoin use of flight paths was "tantamount" to a challenge to the validity of an FAA decision); *Bender v. Jordan*, 623 F.3d 1128, 1131 (D.C. Cir. 2010) (finding federal jurisdiction under *Grable* where breach of contract action arose under federal law because agreement was required by federal law and turned on interpretation of federal regulations).

42.     The two-step process is also satisfied where the alleged dispute "could have" supported the defendant's assertion of a federal declaratory judgment action.  *See Hollyvale Rental Holdings, LLC v. Baum*, 2018 U.S. Dist. LEXIS 56435, at *9 (D. Nev. Mar. 31, 2018) (*Grable* federal question

Defendants' Notice of Removal of Civil Action

jurisdiction existed under the "coercive action" doctrine where defendant "could have . . . brought a separate federal declaratory judgment action").

43.     The *Grable* doctrine and PREP Act are thus directly applicable to Plaintiffs' claims in any event and support this Court's jurisdiction.

**WHEREFORE**, having shown that this case is properly removable on the basis of diversity jurisdiction as well as federal question jurisdiction, Defendant provides notice pursuant to 28 U.S.C. § 1446 that the Action pending in Superior Court for the County of Los Angeles, California, case no. 21STCV13152, is removed to the United States District Court for the Central District of California, Western Division, and respectfully requests that this Court exercise jurisdiction over this case.

Respectfully submitted this 10th day of May, 2021.

**ZARMI LAW**

By:  /s/  David Zarmi
     8950 W Olympic Blvd., #533
     Beverly Hills, CA 90211
     310-841-6455
     davidzarmi@gmail.com
     *Attorney for Defendants Lawndale Healthcare &*
     *Wellness Centre, LLC dba Lawndale Healthcare*
     *& Wellness Centre; Brius, LLC; Ensemble*
     *Healthcare, LLC; Granite Hills Healthcare &*
     *Wellness Centre, LLC; Pacific Rehabilitation &*
     *Wellness Centre, LP; and Pacific Wellness GP,*
     *LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of May, 2021, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then be sent Electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent by first class mail to any counsel of record indicated as non-registered participants.

Dated: May 10, 2021

/s/  David Zarmi
*Attorney for Defendants*

*Attorneys for Plaintiffs*:

Dawn M. Smith, Esq., SBN 222481
SMITH CLINESESMITH, LLP
325 N St. Paul St., 29th Fl.
Dallas, TX 75201
Telephone: (214) 953-1900
Facsimile: (214) 953-1901
dawn@smithclinesmith.com
service@smithclinesmith.com

Defendants' Notice of Removal of Civil Action

Electronically FILED by Superior Court of California, County of Los Angeles on 04/07/2021 09:42 AM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez, Deputy Clerk
21STCV13152

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

**NOTICE TO DEFENDANT:** Lawndale Healthcare & Wellness Centre, LLC d/b/a Lawndale Healthcare
**(AVISO AL DEMANDADO):** & Wellness Centre; Brius, LLC; Ensemble Healthcare, LLC; Granite Hills
Healthcare & Wellness Centre, LLC; Pacific Rehabilitation & Wellness
Centre, LP; Pacific Wellness GP, LLC; and DOES 1-50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Carmela Rogers, Individually and as heir and Successor in
Interest to Carnell Rogers, Deceased

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: *(Número del Caso):* |
|---|---|
| *(El nombre y dirección de la corte es):* Stanley Mosk Courthouse 111 N. Hill Street, Los Angeles CA 90012 | **21STCV13152** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Dawn M. Smith, Smith Clinesmith LLP, 325 N. St. Paulo, 29th Floor, Dallas, Texas 75201 (214) 953-1900 dawn@smithclinesmith.com

| DATE: April 7, 2021 04/07/2021 | Sherri R. Carter Executive Officer / Clerk of Court Clerk, by | , Deputy |
|---|---|---|
| *(Fecha)* | *(Secretario)* N. Alvarez | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* BRIUS, LLC

   under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☒ other *(specify):* Limited Liability Company
4. ☒ by personal delivery on *(date)* 4/9/21

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 485
www.courts.ca.gov

Electronically FILED by Superior Court of California, County of Los Angeles on 04/07/2021 09:42 AM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez,Deputy Clerk

21STCV13152

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Lawndale Healthcare & Wellness Centre, LLC d/b/a Lawndale Healthcare & Wellness Centre; Brius, LLC; Ensemble Healthcare, LLC; Granite Hills Healthcare & Wellness Centre, LLC; Pacific Rehabilitation & Wellness Centre, LP; Pacific Wellness GP, LLC; and DOES 1-50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Carmela Rogers, Individually and as heir and Successor in Interest to Carnell Rogers, Deceased

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Stanley Mosk Courthouse 111 N. Hill Street, Los Angeles CA 90012 | CASE NUMBER: *(Número del Caso):*<br>**21STCV13152** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Dawn M. Smith, Smith Clinesmith LLP, 325 N. St. Paulo, 29th Floor, Dallas, Texas 75201 (214) 953-1900 dawn@smithclinesmith.com

| | | | |
|---|---|---|---|
| DATE: April 7, 2021 **04/07/2021**<br>*(Fecha)* | Sherri R. Carter Executive Officer , Clerk of Court<br>*(Secretario)* | N. Alvarez | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.

2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):*   PACIFIC REHABILITATION & WELLNESS CENTER, LP

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
☒ CCP 416.40 (association or partnership)          ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☒ by personal delivery on *(date)*   4/9/21

[SEAL]

| | |
|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courts.ca.gov |

Electronically FILED by Superior Court of California, County of Los Angeles on 04/07/2021 09:42 AM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez, Deputy Clerk
21STCV13152

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY<br>
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:** Lawndale Healthcare & Wellness Centre, LLC d/b/a Lawndale Healthcare
*(AVISO AL DEMANDADO):* & Wellness Centre; Brius, LLC; Ensemble Healthcare, LLC; Granite Hills
Healthcare & Wellness Centre, LLC; Pacific Rehabilitation & Wellness
Centre, LP; Pacific Wellness GP, LLC; and DOES 1-50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Carmela Rogers, Individually and as heir and Successor in
Interest to Carnell Rogers, Deceased

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: *(Número del Caso):* |
|---|---|
| *(El nombre y dirección de la corte es):*<br>Stanley Mosk Courthouse 111 N. Hill Street, Los Angeles CA 90012 | 21STCV13152 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Dawn M. Smith, Smith Clinesmith LLP, 325 N. St. Paulo, 29th Floor, Dallas, Texas 75201 (214) 953-1900 dawn@smithclinesmith.com

| DATE: April 7, 2021 04/07/2021 | Sherri R. Carter Executive Officer / Clerk of Court , Clerk, by | N. Alvarez , Deputy |
|---|---|---|
| *(Fecha)* | *(Secretario)* | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*


[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* GRANITE HILLS HEALTHCARE & WELLNESS CENTRE, LLC

under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
☒ other *(specify):* Limited Liability Company
4. ☒ by personal delivery on *(date)* 4/9/21

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | SUMMONS | Code of Civil Procedure §§ 412.20, 465<br>www.courts.ca.gov |
|---|---|---|

Electronically FILED by Superior Court of California, County of Los Angeles on 04/07/2021 09:42 AM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez,Deputy Clerk
21STCV13152

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):* Lawndale Healthcare & Wellness Centre, LLC d/b/a Lawndale Healthcare & Wellness Centre; Brius, LLC; Ensemble Healthcare, LLC; Granite Hills Healthcare & Wellness Centre, LLC; Pacific Rehabilitation & Wellness Centre, LP; Pacific Wellness GP, LLC; and DOES 1-50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Carmela Rogers, Individually and as heir and Successor in Interest to Carnell Rogers, Deceased

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: *(El nombre y dirección de la corte es):* Stanley Mosk Courthouse 111 N. Hill Street, Los Angeles CA 90012 | CASE NUMBER: *(Número del Caso):* 21STCV13152 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Dawn M. Smith, Smith Clinesmith LLP, 325 N. St. Paulo, 29th Floor, Dallas, Texas 75201 (214) 953-1900 dawn@smithclinesmith.com

| DATE: *(Fecha)* April 7, 2021 04/07/2021 | Sherri R. Carter Executive Officer / Clerk of Court Clerk, by | , Deputy |
|---|---|---|
| | *(Secretario)* N. Alvarez | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):* LAWNDALE HEALTHCARE & WELLNESS CENTRE, LLC d/b/a
3. ☒ on behalf of *(specify):* LAWNDALE HEALTHCARE & WELLNESS CENTRE

under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
☒ other *(specify):* Limited Liability Company
4. ☒ by personal delivery on *(date)* 4/9/21

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Page 1 of 1 Code of Civil Procedure §§ 412.20, 465 www.courts.ca.gov |
|---|---|---|

Electronically FILED by Superior Court of California, County of Los Angeles on 04/07/2021 09:42 AM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez, Deputy Clerk
21STCV13152

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Malcolm Mackey

Dawn M. Smith, Esq., SBN 222481
SMITH CLINESMITH, LLP
325 N. St. Paul St., 29th Floor
Dallas, TX 75201
Telephone: (214) 953-1900
Facsimile: (214) 953-1901
dawn@smithclinesmith.com
service@smithclinesmith.com
Attorneys for Plaintiff

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF LOS ANGELES

21STCV13152

| | |
|---|---|
| CARMELA ROGERS, Individually and as heir and Successor in Interest to CARNELL ROGERS, Deceased, | Case No.: _____ |
| Plaintiff, | **COMPLAINT** |
| v. | 1. **VIOLATIONS OF THE ELDER AND DEPENDENT ADULT CIVIL PROTECTION ACT [Wel. & Instit. Code § 15600 *et seq.*]** |
| LAWNDALE HEALTHCARE & WELLNESS CENTRE, LLC d/b/a LAWNDALE HEALTHCARE & WELLNESS CENTRE, BRIUS, LLC; ENSEMBLE HEALHCARE, LLC; GRANITE HILLS HEALTHCARE & WELLNESS CENTRE, LLC; PACIFIC REHABILITATION & WELLNESS CENTRE, LP; PACIFIC WELLNESS GP, LLC; and DOES 1-50 | 2. **NEGLIGENCE** <br> 3. **WRONGFUL DEATH** <br><br> **JURY TRIAL DEMANDED** |
| Defendants. | |

COMES NOW Plaintiff, Carmela Rogers, Individually and as Successors-In-Interest to

CARNELL ROGERS, by and through undersigned counsel, and files this Complaint and Demand

for Jury Trial against Defendants and states the following:

## NATURE OF THE CASE

1. This case arises under the Elder and Dependent Adult Civil Protection Act (Welf. & Inst. Code. Sec. 15600 et seq.) based upon Defendants' neglect and deliberate disregard for the health and safety of decedent CARNELL ROGERS, an 85-year-old aged and frail "dependent adult," while at all relevant times a resident at Defendant's skilled nursing facility, LAWNDALE HEALTHCARE & WELLNESS CENTRE ("LAWNDALE") in Lawndale, California. Defendants, and each of them, (1) were required to meet the basic needs of Mr. ROGERS, such as nutrition, hydration, hygiene, safety and medical care, including infection control and prevention, and prevention of serious injury, (2) knew of the conditions that made Mr. ROGERS, a dependent adult, unable to provide for his own basic needs arising from his diagnoses of CHF, high blood pressure, arthritis, and short term memory difficulties, that prevented his from living with his family; and (3) denied and withheld the services and supervision necessary to meet Mr. ROGERS'S basic needs with knowledge that Mr. ROGERS's injuries set forth herein were substantially certain and/or acted with conscious disregard of the high probability of such injuries. Consequently, Mr. ROGERS developed pressure ulcers, COVID-19, Acute Cardiopulmonary Arrest, and Pneumonia.

2. On March 4, 2020, Governor Newsom proclaimed a State of Emergency in California as a result of the threat of COVID-19. Pursuant to the State of Emergency Declaration LAWNDALE was on notice of an infectious disease that could cause acute respiratory distress and had constructive notice of its obligations to create and implement an infection control policy pursuant to under Title 22, California Regulations Section 72321 and 72523. Despite awareness of its obligations arising under these regulations as far back as 2017,

LAWNDALE failed to establish and implement the state mandated infection control policies. As a result of Defendants' abuse and neglect, Mr. ROGERS (1) contracted the novel coronavirus which caused Mr. ROGERS substantial pain and suffering and ultimately his rapid demise and untimely death on August 11, 2020.

3. At all relevant times Defendants' managing agents of the nursing facility, LAWNDALE HEALTHCARE & WELLNESS CENTRE, including but not limited to Defendants' Directors of Nursing, Melita Sumera and Allison Lee, and Defendants' Administrators, Yitzchok Scheinberg and Mohsen Mobasser, gave authority and/or ratified the abuse and neglect of Plaintiff's decedent.  Defendant's managing agents knew LAWNDALE HEALTH CARE CENTER's employees/agents were ignoring policies and procedures necessary for the care and safety of Mr. ROGERS, yet they ignored the ongoing conduct resulting in the injuries and damages alleged herein.

4. Defendants' managing agents, including but not limited to the Director of Nursing and Administrators, were well aware of the state requirements to implement an infection control policy well in advanced of the COVID-19 outbreak, yet ignored these legal requirements and took no reasonable corrective action to prevent future similar incidences. Defendants' managing agents thus knew their residents, including but not limited to Mr. ROGERS, were substantially certain to be impacted by infections like COVID-19, yet failed to ensure that their infection control policy was properly followed and acted with conscious disregard of the high probability of infection like the one alleged herein.

5. Additionally, at all relevant times Defendants' managing agents of the skilled nursing facility, LAWNDALE, including but not limited to Defendants' Directors of Nursing the facility Administrator, gave authority or ratified the abuse and neglect of CARNELL

ROGERS. Specifically, Defendants' managing agents knew LAWNDALE employees/agents were ignoring policies and procedures necessary for the care and safety of Mr. ROGERS including policies pertaining to incontinence care, the prevention/treatment of skin breakdown, and they ignored the ongoing understaffing and preventable conduct resulting in the injuries and damages alleged herein.

6. Further, managing agents knew the facility was chronically understaffed, with high turn-over of essential personnel, and Defendants engaged in a pattern and practice of understaffing and undertraining of staff to cut costs resulting in corporate profits over residents' care needs, which foreseeably resulted in the abuse and neglect of its residents including Mr. ROGERS. The total number of licensed nurse staff hours per resident per day were well below National and California averages. Similarly, the registered nurse hours per resident per day were well below National and California averages. Defendants consciously chose not to increase staff members or increase training. Defendants knew that an insufficient number of staff who were incompetent to meet and provide for the residents' daily care needs put residents at a high risk, and injuries to residents would not only be likely but inevitable. Had Defendants provided sufficient staff at the facility, Mr. ROGERS would have received proper supervision and assistance and would not have suffered his injuries and damages as alleged herein.

7. Defendants' managing agents, including but not limited to the Director of Nursing and Administrator, were well aware of these prior deficiencies and violations leading up to Mr. ROGERS's injuries alleged herein, yet ignored those prior violations and took no reasonable corrective action to prevent future similar incidences. Defendants' managing agents thus knew their residents, including but not limited to Mr. ROGERS, were

1   substantially certain to suffer similar injuries including pressure ulcers to his bottom and

2   feet, moisture-associated skin breakdowns, and acted with conscious disregard of the high

3   probability of future injuries like those alleged herein.

4   **JURISDICTION AND VENUE**

5   8. This cause of action is properly venued in LOS ANGELES County inasmuch as

6   Defendants' facility, LAWNDALE HEALTHCARE & WELLNESS CENTRE is located

7   in LOS ANGELES County, and a substantial part of the events, acts, omissions and

8   transactions complained of herein by LAWNDALE HEALTHCARE & WELLNESS

9   CENTRE, LLC; BRIUS, LLC; ENSEMBLE HEALTHCARE, LLC; GRANITE HILLS

10  HEALTHCARE & WELLNESS CENTRE, LLC; PACIFIC REHABILITATION &

11  WELLNESS CENTER, LP; and PACIFIC WELLNESS GP, LLC and DOES 1-50

12  occurred in this County. Defendants LAWNDALE HEALTHCARE & WELLNESS

13  CENTRE, LLC; BRIUS, LLC; ENSEMBLE HEALTHCARE, LLC; GRANITE HILLS

14  HEALTHCARE & WELLNESS CENTRE, LLC; PACIFIC REHABILITATION &

15  WELLNESS CENTER, LP; and PACIFIC WELLNESS GP, LLC own, operate, manage,

16

17  or otherwise exercise control of LAWNDALE HEALTHCARE & WELLNESS CENTRE,

18  a skilled nursing facility located at 15100 Prairie Avenue, Lawndale, California 90260.

19  9. Defendants DOES 1 – 50 have sufficient minimum contacts with California, or otherwise

20  purposefully availed themselves of benefits and protections of California, or do business

21  in California so as to render the exercise of jurisdiction over them by the California courts

22  consistent with the traditional notions of fair play and substantial justice.

23  10. Plaintiff CARMELA ROGERS is the daughter and successor-in-interest of the decedent,

24  CARNELL ROGERS, and at all relevant times Plaintiff's injuries and damages to

25

CARNELL ROGERS occurred in LOS ANGELES County as her father, decedent CARNELL ROGERS, was a neglected dependent adult under Welfare & Institution Code Section 15600 et seq, and all tortious claims alleged herein in occurred in LOS ANGELES County. Mr. ROGERS is and was at all relevant times a resident of LOS ANGELES County, California.

11. The amount in controversy exceeds the jurisdictional minimum of this court.

## THE PARTIES

12. At all relevant times, Plaintiffs CARMELA ROGERS, were actively involved in her father, CARNELL ROGERS's care and visited him frequently. CARMELA ROGERS is lawfully entitled to pursue all claims and caused of actions for damages pursuant to Code of Civil Procedure sections 377.32, 377.60, 377.61, Welfare and Institution Code section 15657.3(d), and Probate Code section 48.

13. At all times mentioned, Decedent CARNELL ROGERS was 85 years of age and an elderly and "dependent adult" under Welfare and Institution Code section 15657.3(d) who had physical and mental limitations that restricted his ability to carry out normal activities of daily living and he could not protect his rights due to the physical and mental disabilities alleged herein.

14. Defendant LAWNDALE HEALTHCARE & WELLNESS, LLC, d/b/a LAWNDALE HEALTHCARE & WELLNESS CENTRE, hereinafter "LAWNDALE" was at all relevant times herein a skilled nursing facility which provided services at 15100 Prairie Avenue, Lawndale, California 90260.  Defendant may be served with process through its registered agent Derek Cheung at 3580 Wilshire Blvd, 6th Floor, Los Angeles, California 90010.

15. Defendant BRIUS, LLC, hereinafter "BRIUS" at all relevant times herein operated, owned, managed, or staffed a skilled nursing facility which provided services at 15100 Prairie Avenue, Lawndale, California 90260.  Defendant may be served with process through its registered agent Derek Cheung at 3580 Wilshire Blvd, 6th Floor, Los Angeles, California 90010.

16. Defendant ENSEMBLE HEALTHCARE, LLC hereinafter "ENSEMBLE" at all relevant times herein operated, owned, managed, or staffed a skilled nursing facility which provided services at 15100 Prairie Avenue, Lawndale, California 90260.  Defendant may be served with process through its registered agent Steven Stroll at 5600 Wilshire Blvd., Ste. 1600, Los Angeles, CA 90036.

17. Defendant GRANITE HILLS HEALTHCARE & WELLNESS CENTRE, LLC hereinafter "GRANITE HILLS" at all relevant times herein operated, owned, managed, or staffed a skilled nursing facility which provided services at 15100 Prairie Avenue, Lawndale, California 90260.  Defendant may be served with process through its registered agent Derek Cheung at 3580 Wilshire Blvd, 6th Floor, Los Angeles, California 90010.

18. Defendant PACIFIC REHABILITATION & WELLNESS CENTER, LP hereinafter "PACIFIC REHAB" at all relevant times herein operated, owned, managed, or staffed a skilled nursing facility which provided services at 15100 Prairie Avenue, Lawndale, California 90260.  Defendant may be served with process through its registered agent Derek Cheung at 3580 Wilshire Blvd, 6th Floor, Los Angeles, California 90010.

19. Defendant PACIFIC WELLNESS GP, LLC hereinafter "PACIFIC WELLNESS" at all relevant times herein operated, owned, managed, or staffed a skilled nursing facility which provided services at 15100 Prairie Avenue, Lawndale, California 90260.  Defendant may

1    be served with process through its registered agent James Vallon at 3699 Wilshire Blvd.,

2    Ste. 1000, Los Angeles, CA 90010.

3    20. Plaintiff is informed and believes and thereon alleges that Defendants LAWNDALE,

4    BRIUS, ENSEMBLE, GRANITE HILLS, WELLNESS, PACIFIC REHAB, and PACIFIC

5    WELLNESS and DOES 1-50, inclusive are, and, at all times relevant to the acts and

6    occurrences alleged herein were in the business of providing long-term care as a twenty-

7    four-hour skilled nursing care facility as defined in §1250(c) of the Health & Safety Code

8    and were subject to the requirements of Federal and State law.  Plaintiff is informed and

9    believe that LAWNDALE, BRIUS, ENSEMBLE, GRANITE HILLS, WELLNESS,

10   PACIFIC REHAB, and PACIFIC WELLNESS and DOES 1-50, inclusive are and were

11   the owners, managers and/or alter-egos of LAWNDALE, BRIUS, ENSEMBLE,

12   GRANITE HILLS, WELLNESS, PACIFIC REHAB, and PACIFIC WELLNESS and

13   ratified the conduct of DOES 1-50 and their respective agents and employees and are

14   therefore vicariously liable for the acts and omissions of these co-Defendants, their agents

15   and employees, as is more fully herein alleged.

16   21. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES

17   1-50 inclusive, and therefore sue these Defendants by such fictitious names.  Plaintiff is

18   ignorant of the true names and capacities of the nurses and /or medical staff on duty and

19   present during the occurrences herein alleged at LAWNDALE, BRIUS, ENSEMBLE,

20   GRANITE HILLS, WELLNESS, PACIFIC REHAB, and PACIFIC WELLNESS, and

21   therefore sue these nurses or medical staff by the fictitious names of Defendants DOES 1-

22   50 inclusive.  Plaintiff is also ignorant of the true names and capacities of the various

23   administrators, officers, and directors of LAWNDALE, BRIUS, ENSEMBLE, GRANITE

HILLS, WELLNESS, PACIFIC REHAB, and PACIFIC WELLNESS, sued herein as DOES 1-50, inclusive, and therefore sue them by such fictitious names. Plaintiff will seek leave of the Court to amend this Complaint to identify said Defendants when their identities are ascertained. Plaintiff is informed and believes and thereon alleges that DOES 1-50 were licensed or unlicensed health care providers, rendering health care as a skilled nursing facility, and in the respective capacities of owners, managers, administrators, nurses, physician director, or otherwise, agents or employees, to patients, including MR. ROGERS. Plaintiff is informed and believes and, on that basis, alleges that each of the fictitiously named Defendants was in some form or fashion liable and legally responsible for the damages and injuries set forth herein.

22. Under the provisions of Welfare & Institutions Code §15610.27, while a resident at LAWNDALE, Plaintiffs' Decedent CARNELL ROGERS was 85 years old and at all times mentioned an "elder" as defined in Welfare & Institutions Code §15610.17 and Defendants were "caretakers" in a trust relationship as defined in Welfare & Institutions Code §15610.17.

## **FACTUAL BACKGROUND**

23. Whenever in this Complaint it is alleged that a Defendant did any act or thing, it is meant that the Defendants' officers, agents, servants, employees, or representatives did such act or thing and that at the time of such act or thing was done, it was done with the full authorization or ratification of the Defendants, with implied or apparent authority, or was done in the normal routine course and scope of employment of Defendants' managing agents, officers, servants, employees, and/or representatives.

24. The California Legislature has recognized the important role of civil litigation in remedying abuse and neglect of elders and dependent adults. As stated in the Elder Abuse and Dependent Adult Civil Protection Act ("Elder Abuse Act"):

> The Legislature recognizes that elders and dependent adults may be subjected to abuse, neglect, or abandonment and that this state has a responsibility to protect these persons…[and]
> The Legislature further finds and declares that infirm elderly persons and dependent adults are a disadvantaged class, that cases of abuse of these persons are seldom prosecuted as criminal matters, and few civil cases are brought in connection with this abuse due to problems of proof, court delays, and d the lack of incentives to prosecute these suits…[and]
> It is the further intent of the Legislature…to enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults. [Wel. & Inst. Code Sec. 15600]

25. During CARNELL ROGERS's residence at LAWNDALE, the Defendants knew that Mr. ROGERS was in a compromised physical state. As a result, he required close supervision, close monitoring, and medical attention to ensure his health, safety and well-being. Defendant also knew by virtue of Mr. ROGERS's physical state that he was dependent upon them for his activities of daily living including, but not limited to, feeding and dietary planning, skin care, hygiene infection control/prevention, toileting, and physical rehabilitation/exercise.

26. At all relevant times, Mr. ROGERS, decedent, was an 85-year-old with a medical history of congestive heart failure ("CHF"), high blood pressure, arthritis, and short term memory difficulties, which had the effect of limiting his mobility and made him dependent on LAWNDALE 's staff for Activities of Daily living. Each and all of these comorbidities, of which the Defendants were aware at the time of admission, made Mr. ROGERS extremely susceptible to contracting airborne ailments.

27. In 2019, Mr. ROGERS was admitted to LAWNDALE for physical therapy and rehabilitation to gain back some mobility.

28. As a nursing home, LAWNDALE and DOES 1-50, and each of them, were charged with providing much needed care and rehabilitation services to dependent and elderly adults in Los Angeles County.  Like other skilled nursing facilities ("SNFs"), LAWNDALE, was entrusted with highly vulnerable individuals, including but not limited to Mr. ROGERS, who often had multiple physical impairments that required extensive assistance in the basic activities of daily living such as ambulation, turning and repositioning, and avoiding otherwise avoidable illnesses.

29. Like the other residents at LAWNDALE, Mr. ROGERS was entirely dependent on Defendants. LAWNDALE 's most important duty was to protect its residents from health and safety hazards.  Defendants failed to meet their responsibilities to provide for the health and safety of Mr. ROGERS and as a direct and proximate cause of Defendants' failure to meet those responsibilities Mr. ROGERS contracted COVID-19, which caused extensive and unnecessary pain and suffering during the final days of his life.

30. Specifically, the Defendants failed to implement effective infection control policies throughout their facility, including:

    a. Failing to enforce social distancing among residents;

    b. Failing to cancel all group activities and communal dinning;

    c. Failing to timely restrict all visitors;

    d. Failing to ensure appropriate staffing levels;

    e. Failing to adequately screen volunteers and non-essential healthcare personnel prior to allowing heir entrance into the facility;

  f. Failing to actively screen everyone entering the building for fever and symptoms of COVID-19;

  g. Failing to monitor local, state and federal health guidance on the coronavirus for maintaining the safety of its residents

all of which enabled Mr. ROGERS to contract COVID-19. The combination of these failures effectively caused catastrophic damage to Mr. ROGERS, who passed away from COVID-19 ailments on August 11, 2020.

31. On or about Spring of 2020, Mr. ROGERS's family discovered pressure ulcers on his buttocks and foot. The pressure ulcers were the size of a nickel at this time.

32. On or about March 2020, LAWNDALE went on lockdown due to the COVID-19 pandemic. During this time, CARMELA ROGERS would still visit her father regularly through the window. During her window visits, CARMELA ROGERS personally observed staff members not wearing gloves and masks.

33. On or about Fall of 2020, Mr. ROGERS's pressure ulcers worsened and increased in size to the size of a quarter.

34. During one visit to LAWNDALE, CARMELA ROGERS observed her father sitting with his pants soaked in his own urine. When CARMELA ROGERS brought this to LAWNDALE staff's attention, staff were dismissive about her concerns.

35. On or about August 2020, Mr. ROGERS was moved to a COVID-19 area at LAWNDALE. His family was not informed as to why he was moved to this area of the facility.

36. Shortly after he was moved to this area of the facility, Mr. ROGERS's roommate tested positive for COVID-19.

37. A LAWNDALE staff member who was familiar with Mr. ROGERS's family told them that around this time, Mr. ROGERS was behaving oddly, and was not being properly cared

for at the facility. Specifically, the staff member explained that Mr. ROGERS was often tired and hungry, that LAWNDALE staff was not properly administering Mr. ROGERS's medications, and that he was left in his wheelchair for extended periods of time without a protective, pressure-relieving cushion.

38. During a visit on or about August 2020, CARMELA ROGERS was visiting her father when she noticed that he was wheezing. When she questioned LAWNDALE staff about her father's condition, she was told that they were treating Mr. ROGERS with Robitussin.

39. On or about August 8, 2020, Mr. ROGERS was transferred to Gardena Memorial Hospital ("Gardena Memorial"). CARMELA ROGERS was not notified that her father was transferred until the next day. When she did receive a call from LAWNDALE that her father was transferred to the hospital, all LAWNDALE staff would tell her was that something happened and that Mr. ROGERS was having trouble breathing.

40. Upon admission to Gardena Memorial, Mr. ROGERS was found to be suffering from COVID-19, which he contracted at LAWNDALE due to LAWNDALE staff's failure to follow their infectious control policies.

41. On August 11, 2020, Mr. ROGERS died. His causes of death are listed as Acute Cardiopulmonary Arrest, Pneumonia, and COVID-19.

42. California Regulations clearly demonstrate that at least as early as 2011, California Nursing homes were required to create, implement, maintain, and train their staff as to proper infection control techniques, an obligation which pertained to Defendant LAWNDALE inasmuch as they claim to operate their facility as a skilled nursing facility.

43. Despite this regulatory requirement, Defendant LAWNDALE failed to either create, implement, maintain, or train their staff in the proper infection control mechanisms necessary to avoid the transmission of disease.

44. Defendants' chronic violation of staff-to-patient ratios, inadequate training of its staff in relation to infection control, and failure to provide for Mr. ROGERS's safety and care after assessing her as suffering from decreased mobility as alleged herein amounted to *reckless neglect,* as Defendants' conduct CARNELL ROGERS to the level of a conscious choice of a course of action with knowledge of the serious danger to Mr. ROGERS.

45. Despite their awareness of the risks to Plaintiff's decedent's health and well-being, the care custodian defendants and each of them repeatedly and flagrantly violated several provisions of title 22 of the California Code of Regulations as follows:

   a. failed to frequently monitor decedent's condition in order to prevent injury [§72311(a)(1)(A)], which includes included monitoring her to prevent avoidable falls and accidents, and failure to prevent an otherwise avoidable infection;

   b. failed to develop a care plan with measurable objectives to assure decedent received adequate care [§72311(a)(1)(B)];

   c. failed to implement a reasonable care plan;

   d. failed to notify decedent's treating physician of adverse changes in her condition [§72311(a)(3)(B)];

   e. failed to properly organize, manage, operate, and/or control LAWNDALE [§72501];

   f. violated decedent's right to be free from mental and/or physical abuse [§72527(a)(9)];

g. violated decedent's right to be treated with consideration, respect and full recognition of dignity and individuality, including privacy in treatment and in care of personal needs [§72527(a)(11)];

h. failed to document reasons for the denial or limitations of decedent's rights in her health record;

a. failed to failed to properly implement and maintain a proper infection prevention and control program designed to provide a safe, sanitary, and comfortable environment and to help prevent the development and transmission of communicable diseases and infections [§72321(b)].

i. LAWNDALE failed to develop a comprehensive care plan for decedent which included measurable objectives and timetables to meet her medical, nursing, mental and psycho social needs identified in the comprehensive assessment for decedent; more specifically, they failed to develop a realistic plan to assess his ongoing pain, given defendant's knowledge that decedent had limited cognitive abilities [§72311(a)(2)];

j. during decedent's stay, LAWNDALE failed to maintain an adequate number of qualified personnel to carry out the functions of the facility, especially in light of the number of patients in its facility and the acuity of care necessary for the population of patients; LAWNDALE also failed to maintain the bare minimum daily average of 3.0 nursing hours per patient per day [§§72329(a) and (f), 72501(e)].

k. In addition, and also despite their awareness of the risks to decedent's health and well-being, the care custodian defendants and each of them failed to employ an

adequate number of qualified personnel at LAWNDALE throughout the course of decedent's residency, a repeated and flagrant violation of Health and Safety Code §1599.1(a);

l.  Failed to enforce social distancing among residents;

m.  Failed to cancel all group activities and communal dinning;

n.  Failed to timely restrict all visitors;

o.  Failed to ensure appropriate staffing levels;

p.  Failed to adequately screen volunteers and non-essential healthcare personnel prior to allowing heir entrance into the facility; and

q.  Failed to actively screen everyone entering the building for fever and symptoms of COVID-19;

r.  Failing to monitor local, state and federal health guidance on the coronavirus for maintaining the safety of its residents;

s.  failed to frequently monitor CARNELL ROGERS's condition in order to prevent injury [§72311(a)(1)(A)];

t.  failed to develop a care plan with measurable objectives to assure CARNELL ROGERS received adequate care [§72311(a)(1)(B)];

u.  failed to implement a reasonable care plan to address his treatment needs;

v.  failed to notify CARNELL ROGERS's treating physician of adverse changes in hiscondition [§72311(a)(3)(B)];

w.  failed to properly organize, manage, operate, and/or control Defendants' facility [§72501];

x.  violated CARNELL ROGERS's right to be free from mental and/or physical abuse [§72527(a)(9)];

y.  violated CARNELL ROGERS's right to be treated with consideration, respect and full recognition of dignity and individuality, including privacy in treatment and in care of personal needs [§72527(a)(11)];

z.  failed to document reasons for the denial or limitations of CARNELL ROGERS's rights in his health record;

aa. failed to develop a comprehensive care plan for CARNELL ROGERS which included measurable objectives and timetables to meet his medical, nursing, mental and psychosocial needs identified in the comprehensive assessment for CARNELL ROGERS; more specifically, they failed to develop a realistic plan prevent the development of moisture-associated skin breakdowns. In addition, they failed to prevent COVID-19, pneumonia, acute cardiopulmonary arrest, pressure ulcers, and moisture-associated skin breakdown of his buttocks and feet. [§72311(a)(2)];

bb. failed to maintain an adequate number of qualified personnel to carry out the functions of the facility, especially in light of the number of patients in its facility and the acuity of care necessary for the population of patients; Defendants also failed to maintain the bare minimum daily average of 3.0 nursing hours per patient per day [§§72329(a) and (f), 72501(e)].

cc. In addition, and also despite their awareness of the risks to CARNELL ROGERS's health and well-being, the care custodian defendants and each of them failed to employ an adequate number of qualified personnel at Defendants' facility

throughout the course of CARNELL ROGERS's residency, a repeated and flagrant violation of Health and Safety Code §1599.1(a).

46. In addition, and also despite their awareness of the risks to decedent's health and well-being, the care custodian defendants and each of them repeatedly violated several provisions of title 42 of the Federal Code of Regulations as follows:

    b. failed to review and revise said defendants' assessment of decedent's needs as his condition changed [42 CFR §483.20(b)(5)];

    c. failed to develop a comprehensive care plan for meeting decedent's needs [42 CFR §483.20(d)];

    d. failed to provide decedent with the necessary care and services required to attain or maintain the highest practicable physical, mental and psychosocial well-being [42 CFR §483.25], including ensuring her fluid intake and output levels to ensure that she was receiving necessary fluids for proper function of Mr. ROGERS's urinary tract;

    e. failed to develop a comprehensive care plan for CARNELL ROGERS which included measurable objectives and timetables to meet his medical, nursing, mental and psychosocial needs identified in the comprehensive assessment for CARNELL ROGERS; more specifically, they failed to develop a realistic plan prevent the development of pressure ulcers and moisture-associated skin breakdowns. In addition, they failed to prevent COVID-19 and pneumonia [42 CFR §§483.20(i) and (k)];

    f. failed to provide proper nursing services, including but not limited to maintaining sufficient staffing levels to provide proper care [42 CFR §483.30];

-18-
COMPLAINT

g. failed to develop a comprehensive care plan for decedent which included measurable objectives and timetables to meet his medical, nursing, mental and psycho social needs identified in the comprehensive assessment for decedent; more specifically, they failed to develop a realistic plan to assess his needs given Defendants' knowledge that decedent had limited cognitive abilities [42 CFR §§483.20(i) and (k)];

h. failed to provide an environment to promote maintenance or enhancement of decedent's quality of life and violated decedent's right to be treated with dignity and respect [42 CFR §483.15];

i. failed to provide sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental and psycho social well-being of decedent and other residents [42 CFR §483.30]

j. failed to properly implement and maintain a proper infection prevention and control program designed to provide a safe, sanitary, and comfortable environment and to help prevent the development and transmission of communicable diseases and infections [42 C.F.R. §483.80].

47. As a direct and legal result of the foregoing, decedent was injured and sustained personal injury in a sum according to proof at trial.

48. As a further and direct result of the foregoing, Plaintiff required acute medical care and has incurred medical expenses in a sum according to proof at trial.

## COUNT I – ELDER ABUSE AND DEPENDENT ADULT CIVIL PROTECTION ACT
(AGAINST ALL DEFENDANTS)

49. Plaintiff incorporates by reference and re-alleges all of the allegations contained in the preceding paragraphs as though set forth fully herein.

50. At all relevant times CARNELL ROGERS was a dependent adult as defined by Welfare Institutions Code section 15610.27. He was 85 years of age at the time of Defendants' misconduct and completely reliant on Defendants for all of her care needs in light of his comorbidities and immobility.

51. The actions described above constitute neglect as defined by Welfare and Institutions Code section 15610.57. Defendants, and each of them, neglected Mr. ROGERS, abandoned their obligations and engaged in other mistreatment that resulted in physical harm, pain and mental suffering. Defendants as Mr. ROGERS's care custodians, deprived Mr. ROGERS of services that were necessary to avoid physical harm and mental suffering. Defendants failed to provide adequate funding and staffing to ensure that Defendants provided necessary care to Mr. ROGERS. Defendant failed to: (1) exercise the degree of care that a reasonable person in a like position would exercise; (2) protect Mr. ROGERS from health and safety hazards (3) provide necessary care and protection; (4) provide medical care for physical and mental health needs; (5) prevent malnutrition and dehydration; (6) create and update an adequate plan of care to protect Mr. ROGERS given the COVID-19 outbreak at LAWNDALE ; (7) provide adequate staffing levels to provide Mr. ROGERS with the assistance that she needed; and (8) adequately train staff to assess and respond to infections outbreaks. As described in this Complaint, Defendants' conduct constitutes neglect of an elder under Welfare and Institutions Code section 15610.57(a)(1) and (b)(1)-(4).

52. MR. ROGERS has been harmed by Defendants conduct as described herein. The pattern of substandard care and neglect to Mr. ROGERS put her at extremely high risk for further injury and contracting COVID-19, and the resulting complications, including injury and death. Defendants' conduct was a substantial factor in causing Mr. ROGERS to suffer physical, emotional, and economic harm, as well as other damages in an amount to be determined according to proof.

53. Defendants acted with recklessness, malice, oppression and/or fraud. Among other things, Defendants neglected to take the necessary precautions to prevent Mr. ROGERS's injuries. Defendants' failure to properly implement an infection control policy in accordance with state and federal guidance as alleged herein amounted to, at a minimum ***reckless neglect,*** as Defendants' conduct CARNELL ROGERS to the level of a conscious choice of a course of action with knowledge of the serious danger to Mr. ROGERS. Plaintiff, individually and as successor in interest to Mr. ROGERS is entitled to compensatory damages, as well as punitive damages in an amount to be determined according to proof, as well as attorney's fees and costs pursuant to Welfare and Institutions Code Section 15657.

## COUNT II – NEGLIGENCE
(AGAINST ALL DEFENDANTS)

54. Plaintiff incorporates by reference and re-alleges all of the allegations contained in the preceding paragraphs as though set forth fully herein.

55. Plaintiff was a resident of LAWNDALE and DOES 1-50 and under the care of Defendants, and each of them, from on or about 2019 through August 2020. By virtue of the foregoing, Defendants and each of them owed a duty of ordinary care to the decedent, to use that degree of care and skill that a reasonably prudent person would use under the same or similar circumstances, including but not limited to a duty to:

A. Ensure that each care worker receive adequate training before working with Mr. ROGERS;

B. Monitor, record and report changes in Mr. ROGERS' condition;

C. Note and properly react to emergent conditions and provide timely medical care to Mr. ROGERS or otherwise act appropriately when conditions indicate; and

D. Treat Mr. ROGERS as an individual with respect, dignity, and without abuse;

E. Implement a state required infectious control policy.

56. Defendants and each of them breached the aforesaid duty of care.

57. Defendants' negligence, carelessness, recklessness, and unlawfulness was a substantial factor in causing Mr. ROGERS to suffer tremendous physical, emotional, economic and fatal harm as well as other damages to be proven at the time of trial.

58. As a direct and proximate cause of Defendants' tortious misconduct decedent suffered personal injuries and economic damages in a sum to be proven at the time of trial. Mr. ROGERS suffered tremendous physical, emotional, and economic harm as well as other damages in an amount to be determined according to proof.

### COUNT III---WRONGFUL DEATH

### (AGAINST ALL DEFENDANTS)

59. Plaintiffs incorporate by reference and reallege all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

60. Defendants and DOES 1-50, and each of them, negligently, carelessly, recklessly and/or unlawfully operated LAWNDALE so as to cause the death of CARNELL ROGERS.

61. Defendants LAWNDALE and DOES 1-50 were agents, servants, employees, successors in interest, and/or joint venturers of one another, and were, as such, acting within the

course, scope, and authority of said agency, employment, and/or venture when they negligently, carelessly, recklessly, and unlawfully withheld necessary care from CARNELL ROGERS so as to cause CARNELL ROGERS'S death.

62. As a direct and legal result of the wrongful acts and omissions of the Defendants, CARNELL ROGERS died.

63. By reason of the wrongful death of CARNELL ROGERS resulting from the wrongful acts and omissions of the Defendants, and DOES 1-50, Plaintiff has incurred funeral and burial expenses, and related medical expenses, in an amount to be determined at trial.

64. By reason of the wrongful death of CARNELL ROGERS, resulting from the wrongful acts and omissions of Defendants and DOES 1-50 and each of them, Plaintiff suffered and continue to suffer loss of love, companionship, comfort, affection, solace, and the moral and economic support of her father.

65. As a direct a legal result of the aforementioned acts of Defendants LAWNDALE, and DOES 1-50, inclusive, Plaintiffs, by reason of the wrongful death of CARNELL ROGERS, resulting from the wrongful acts and/or omissions of Defendants, hereby seek recovery of other such relief as may be just and provided for under Code of Civ. Proc. § 377.61.

66. Plaintiffs are informed and believe, and thereon allege, that in the days leading up to CARNELL ROGERS's death and continuing through her death, Defendants LAWNDALE and DOES 1 through 50, and each of them, at all times mentioned, were under a statutory duty to comply with all applicable federal and state laws and regulations governing nursing homes in California, including but not limited to the following:

- 42 C.F.R. § 483.10(a) & (e) (respect, dignity, & without abuse);

- 42 C.F.R. § 483.21 (care plan);

- 42 C.F.R. § 483.25 (quality care must be provided, protecting for health and safety hazards);
- 42 C.F.R. § 483.30 (adequate physician oversight);
- Cal. Health & Safety Code § 1279.6 (safety plan);
- Cal. Health & Safety Code § 1337.1 (adequate training);
- Cal. Health & Safety Code § 1559.1(a) (adequate and qualified staff);
- 22 CCR § 72311 (Care plan and prompt reporting)
- 22 CCR § 72315 (required services);
- 22 CCR § 72329(a) & 72501(e) (adequate staffing);
- 22 CCR § 72517 (adequate training);
- 22 CCR § 72523 (adequate policies and procedures);
- 22 CCR § 72527(a)(11) (respect, dignity, & without abuse);
- 22 CCR § 72537 (reporting of communicable diseases);
- 22 CCR § 72539 (reporting of outbreaks);
- 22 CCR § 72541 (reporting of unusual occurrences);
- 42 U.S.C. § 1396r(b)(2) (adequate plan of care);

Defendants' violations of these laws and regulations were a contributing factor to the death of CARNELL ROGERS.

67. CARNELL ROGERS was one of the class of persons whose protection the aforementioned laws and regulations, as well as Welfare and Institutions Code §§15600 *et seq.,* was afforded.

68. As a direct and legal result of the wrongful acts and omissions of Defendants, including DOES 1-50, CARNELL ROGERS died.

69. By reason of the wrongful death of CARNELL ROGERS resulting from the wrongful acts and omissions of Defendants, and DOES 1-50, Plaintiffs have incurred funeral and burial expenses, and related medical expenses, in an amount to be determined at trial.

70. By reason of the wrongful death of CARNELL ROGERS, resulting from the wrongful acts and omissions of Defendants

## ENHANCED REMEDIES - WILFULL MISCONDUCT
(AGAINST ALL DEFENDANTS)

71. Plaintiff incorporates by reference and re-alleges all of the allegations contained in the preceding paragraphs as though set forth fully herein.

72. Because Mr. ROGERS was a resident of LAWNDALE, defendants LAWNDALE, BRIUS, GRANITE HILLS, WELLNESS, PACIFIC REHAB, PACIFIC WELLNESS and DOES 1 to 50, inclusive, had a duty under federal and state law and regulations designed and implemented for the protection and benefit of skilled nursing resident including Mr. ROGERS to provide their patients with care, comfort and safety.

73. Defendants LAWNDALE, BRIUS, GRANITE HILLS, WELLNESS, PACIFIC REHAB, PACIFIC WELLNESS and DOES 1 to 50, inclusive owed a duty to Mr. ROGERS to provide her with 24-hour nursing care and physician services necessary to attain and maintain Plaintiff's highest practicable level of physical, mental and psycho social well-being.

74. In addition, and without limiting the generality of the foregoing, defendants LAWNDALE, BRIUS, GRANITE HILLS, WELLNESS, PACIFIC REHAB, PACIFIC WELLNESS and DOES 1 to 50 provide skilled nursing care and physician services in accordance with the prevailing Standard of Practice in the Skilled Nursing Facilities and State and Federal laws and regulations;

a. establish and implement a patient-care plan for plaintiff based upon and including without limitation an ongoing process of identifying care needs;

b. maintain nursing and other staffing at levels adequate to meet the needs of decedent;

c. follow proper nursing and physician care standards to maximize the health, safety and well-being of decedent;

d. note and properly react to emergency conditions and to timely transfer decedent to an acute care facility or otherwise act when conditions so indicated;

e. maintain accurate records of decedent's condition, treatment and activity;

f. employ nursing staff with the qualifications to provide the necessary nursing services for plaintiff;

g. implement the facility policy and procedures consistently;

h. keep all current clinical information centralized in decedent's health record;

i. provide appropriate records for physicians and ancillary orders;

75. Defendants LAWNDALE, BRIUS, GRANITE HILLS, WELLNESS, PACIFIC REHAB, PACIFIC WELLNESS and DOES 1 to 50, inclusive and each of them, willfully and/or recklessly ignored or otherwise violated the state and federal laws and regulations designed to protect patients of skilled nursing facilities, including Mr. ROGERS; said laws include, without limitation, those statutes and regulations set forth herein.

76. These acts were intentional and in reckless disregard for the probability that severe injury or death would result from defendants' failure to carefully adhere to their duties. Defendants's managing agents including but not limited to the Director of Nursing and/or administrator knew of staff failures and ratified that conduct by failing to take any reasonable action to implement proper protocols to protect against severe injury and death.

77. Defendants LAWNDALE, BRIUS, GRANITE HILLS, WELLNESS, PACIFIC REHAB, PACIFIC WELLNESS AND DOES 1 to 50, inclusive and each of them, knew or should have known in the exercise of reasonable diligence, that there was a probability that injury or death to Mr. ROGERS would result from their failure to perform their duties.

78. At all times herein mentioned, defendants LAWNDALE, BRIUS, GRANITE HILLS, WELLNESS, PACIFIC REHAB, PACIFIC WELLNESS, and DOES 1 to 50, inclusive, and each of them, knew of the existence of the regulations and laws that protected elders and dependent adults and knew that the lives and health of residents such as decedent were at risk whenever defendants failed to meet such duties.

79. Defendants LAWNDALE, BRIUS, GRANITE HILLS, WELLNESS, PACIFIC REHAB, PACIFIC WELLNESS and DOES 1 to 50, inclusive, and each of them, knew their routine, pattern and repeated failure to comply with such duties would probably result in injuries to residents, including Mr. ROGERS and in fact, did result in injury to Mr. ROGERS.

80. In breaching their duties to plaintiff, defendants acted intentionally and in conscious disregard of the health and safety of their residents, including plaintiff, all according to the plan of maintaining inadequate resident care, thereby unlawfully increasing the profitability of LAWNDALE, BRIUS, GRANITE HILLS, WELLNESS, PACIFIC REHAB, PACIFIC WELLNESS and DOES 1-50'S business operations.

81. That is defendants, under the control of and management of LAWNDALE, BRIUS, GRANITE HILLS, WELLNESS, PACIFIC REHAB, PACIFIC WELLNESS and DOES 1-50, determined that they would ignore common and basic legally required minimum care to the elders and dependent under their care and custody for the sole purpose of increasing

1  profits irrespective of the mayhem and death defendant's conduct was reaping upon the

2  elders, including Mr. ROGERS.

3  82. In doing the acts alleged herein, defendants LAWNDALE, BRIUS, GRANITE HILLS,

4  WELLNESS, PACIFIC REHAB, PACIFIC WELLNESS and DOES 1 to 50, inclusive,

5  and each of them, breached certain duties which would require them to devote resources to

6  the care and treatment of patients like Mr. ROGERS and to maintain adequate staffing

7  levels, not to divert those resources solely to the attainment of profit goals.

8  83. The conduct of defendants, as alleged, constitutes neglect as defined in Welfare &

9  Institutions Code §15610.57 in that said defendants failed to exercise the degree of care

10  that a reasonable person having the care and custody of CARNELL ROGERS would

11  exercise. The "neglect" as defined in Welfare & Institutions Code, §15610.57 constitutes

12  abuse of a dependent adult as contemplated by the Elder Adult Dependent Adult Civil

13  Protection Act [EADACPA] and *Delaney v. Baker* (1999) 20 Cal.4th 23.

14

15

16

17

18

19

20

21

22

23

24

25

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and damages against Defendant as follows:

    a.  General and special compensatory damages according to proof;

    b.  Punitive damages according to proof, including but not limited to treble punitive damages per Civil Code section 3345;

    c.  For prejudgment and post-judgment interest upon such judgment at the maximum rate provided by law;

    d.  Reasonable costs of suit;

    e.  Attorney's fees per Welfare and Institutions Code section 15657; and

    f.  Such other or further relief as the Court may deem proper.

RESPECTFULLY SUBMITTED March 31, 2021.

/s/ Dawn M. Smith
Dawn M. Smith, Esq.
SMITH CLINESMITH, LLP
325 N. St. Paul St., 29th Floor
Dallas, TX 75201
Telephone: (214) 953-1900
Facsimile: (214) 953-1901
dawn@smithclinesmith.com
Attorney for Plaintiffs

-29-
COMPLAINT

Electronically FILED by Superior Court of California, County of Los Angeles on 04/07/2021 09:42 AM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez, Deputy Clerk

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* 21STCV13152 | FOR COURT USE ONLY |
|---|---|
| Dawn M. Smith, Esq. (SBN 222481)<br>325 N. St. Paul, 29th Floor<br>Dallas, Texas 75201 | |

TELEPHONE NO.: 214-953-1900    FAX NO. *(Optional):* 214-953-1901
ATTORNEY FOR *(Name):*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Carmela Rogers et al. v. Lawndale Healthcare & Wellness Centre, LLC et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 21STCV13152 |
| | | | JUDGE: | |
| | | | DEPT.: | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[X] Other petition *(not specified above)* (43)

2. This case [ ] is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties        d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more
      issues that will be time-consuming to resolve                 courts in other counties, states, or countries, or in a federal
   c. [ ] Substantial amount of documentary evidence              court
                                                               f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [ ] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify):* 3
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: 03/31/2021

Dawn M. Smith, Esq.
_____
(TYPE OR PRINT NAME)

▶ *Dawn M. Smith*
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |
|---|---|---|

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

Electronically FILED by Superior Court of California, County of Los Angeles on 04/07/2021 09:42 AM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez,Deputy Clerk
21STCV13152

| SHORT TITLE: Carmela Rogers et al. v. Lawndale Healthcare & Wellness Centre et al. | CASE NUMBER 21STCV13152 |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
# STATEMENT OF LOCATION
# (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

**Applicable Reasons for Choosing Court Filing Location (Column C)**

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: Carmela Rogers et al. v. Lawndale Healthcare & Wellness Centre et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

SHORT TITLE: Carmela Rogers et al. v. Lawndale Healthcare & Wellness Centre et al.    CASE NUMBER

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2, 8<br>2<br>2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2, 5, 11<br>2, 6<br>2, 9<br>2, 8<br>2, 8<br>2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8<br>2, 8<br>1, 2, 8<br>1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment With Damages<br>☐ A6123  Workplace Harassment With Damages<br>☑ A6124  Elder/Dependent Adult Abuse Case With Damages<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name/Change of Gender<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2, 3, 9<br>2, 3, 9<br>2, 3, 9<br>2<br>2, 7<br>2, 3, 8<br>2, 9 |

| SHORT TITLE: Carmela Rogers et al. v. Lawndale Healthcare & Wellness Centre et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address**: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON:<br><br>□ 1. ☑ 2. ☑ 3. □ 4. □ 5. □ 6. □ 7. □ 8. ☑ 9. □ 10. □ 11. | ADDRESS:<br><br>15100 Prairie Avenue |
|---|---|

| CITY:<br><br>Lawndale | STATE:<br><br>CA | ZIP CODE:<br><br>90260 | |
|---|---|---|---|

**Step 5: Certification of Assignment**: I certify that this case is properly filed in the _Central_ _____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: 03/31/2021                                        _Dawn M. Smith_
                                                         (SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

MAY 0 3 2019

Sherri R. Carter, Executive Officer/Clerk

By_____, Deputy
Rizalinda Mina

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| IN RE LOS ANGELES SUPERIOR COURT ) — MANDATORY ELECTRONIC FILING ) FOR CIVIL ) ) ) ) | FIRST AMENDED GENERAL ORDER |

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) **DEFINITIONS**

   a) **"Bookmark"**   A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

   b) **"Efiling Portal"**   The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

   c) **"Electronic Envelope"**   A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

   d) **"Electronic Filing"**   Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

---

FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL

2019-GEN-014-00

e) **"Electronic Filing Service Provider"**   An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.  (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**   For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**   An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**   A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) **MANDATORY ELECTRONIC FILING**

a) **Trial Court Records**

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b) **Represented Litigants**

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c) **Public Notice**

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

2

FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL

2019-GEN-014-00

    d)  Documents in Related Cases

        Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3)  **EXEMPT LITIGANTS**

    a)  Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

    b)  Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4)  **EXEMPT FILINGS**

    a)  The following documents shall not be filed electronically:

        i)    Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

        ii)   Bonds/Undertaking documents;

        iii)  Trial and Evidentiary Hearing Exhibits

        iv)  Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

        v)    Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

    b)  Lodgments

        Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

2019-GEN-014-00

5) **ELECTRONIC FILING SYSTEM WORKING PROCEDURES**

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) **TECHNICAL REQUIREMENTS**

a) Electronic documents must be electronically filed in PDF, text searchable format when technologically feasible without impairment of the document's image.

b) The table of contents for any filing must be bookmarked.

c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

    i)    Depositions;

    ii)   Declarations;

    iii)  Exhibits (including exhibits to declarations);

    iv)  Transcripts (including excerpts within transcripts);

    v)   Points and Authorities;

    vi)  Citations; and

    vii)  Supporting Briefs.

e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f) **Accompanying Documents**

Each document acompanying a single pleading must be electronically filed as a separate digital PDF document.

g) **Multiple Documents**

Multiple documents relating to one case can be uploaded in one envelope transaction.

2019-GEN-014-00

h) **Writs and Abstracts**

Writs and Abstracts must be submitted as a separate electronic envelope.

i) **Sealed Documents**

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) **Redaction**

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) **ELECTRONIC FILING SCHEDULE**

a) **Filed Date**

i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing. Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted.   (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of:  (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) **EX PARTE APPLICATIONS**

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

1      b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the

2          day of the ex parte hearing.  A printed courtesy copy of any opposition to an ex parte

3          application must be provided to the court the day of the ex parte hearing.

4   9) **PRINTED COURTESY COPIES**

5      a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must

6          be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled.  If

7          the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom

8          by 10:00 a.m. the next business day.

9      b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of

10        electronic submission) is required for the following documents:

11          i)    Any printed document required pursuant to a Standing or General Order;

12          ii)   Pleadings and motions (including attachments such as declarations and exhibits) of 26

13              pages or more;

14          iii)  Pleadings and motions that include points and authorities;

15          iv)  Demurrers;

16          v)   Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

17          vi)  Motions for Summary Judgment/Adjudication; and

18          vii)  Motions to Compel Further Discovery.

19      c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of

20        additional documents.  Courtroom specific courtesy copy guidelines can be found at

21        www.lacourt.org on the Civil webpage under "Courtroom Information."

22  10) **WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS**

23      a) Fees and costs associated with electronic filing must be waived for any litigant who has

24        received a fee waiver.  (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. §

25        1010.6(d)(2).)

26      b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure

27        section 1010.6, subdivision (b)(6), and  California Rules of Court, rule 2.252(f), may be

28        electronically filed in any authorized action or proceeding.

2019-GEN-014-00

1  11) SIGNATURES ON ELECTRONIC FILING

2      For purposes of this General Order, all electronic filings must be in compliance with California

3  Rules of Court, rule 2.257.  This General Order applies to documents filed within the Civil

4  Division of the Los Angeles County Superior Court.

5

6      This First Amended General Order supersedes any previous order related to electronic filing,

7  and is effective immediately, and is to remain in effect until otherwise ordered by the Civil

8  Supervising Judge and/or Presiding Judge.

9

10  DATED:  May 3, 2019          

11                              KEVIN C. BRAZILE
                                Presiding Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**

**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

| | | Reserved for Clerk of File Stamp |
|---|---|---|
| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | |
| TELEPHONE NO.:  FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department,

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

**STIPULATION – DISCOVERY RESOLUTION**

| SHORT TITLE | CASE NUMBER |
|---|---|
| | |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

    It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE | CASE NUMBER |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

| COURTHOUSE ADDRESS: |
|---|
| PLAINTIFF: |
| DEFENDANT: |

| STIPULATION — EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

The parties agree that:

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE | CASE NUMBER |
|---|---|
|  |  |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ (INSERT DATE) for the complaint, and _____ (INSERT DATE) for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____              >  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)

Date:

_____              >  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____              >  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____              >  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____              >  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____ )

Date:

_____              >  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____ )

_____              >  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____ )

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: | FAX NO. (Optional): | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| INFORMAL DISCOVERY CONFERENCE (pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐ Request for Informal Discovery Conference
   Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request)

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. For a Request for Informal Discovery Conference, **briefly** describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, **briefly** describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

### SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER |
|---|---|

This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.

The parties agree that:

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE | CASE NUMBER |
|---|---|
| | |

## The following parties stipulate:

Date: _____

\> _____

(TYPE OR PRINT NAME)            (ATTORNEY FOR PLAINTIFF)

Date: _____

\> _____

(TYPE OR PRINT NAME)            (ATTORNEY FOR DEFENDANT)

Date: _____

\> _____

(TYPE OR PRINT NAME)            (ATTORNEY FOR DEFENDANT)

Date: _____

\> _____

(TYPE OR PRINT NAME)            (ATTORNEY FOR DEFENDANT)

Date: _____

\> _____

(TYPE OR PRINT NAME)            (ATTORNEY FOR _____ )

Date: _____

\> _____

(TYPE OR PRINT NAME)            (ATTORNEY FOR _____ )

Date: _____

\> _____

(TYPE OR PRINT NAME)            (ATTORNEY FOR _____ )

## THE COURT SO ORDERS.

Date: _____        _____

JUDICIAL OFFICER

 **Superior Court of California, County of Los Angeles**

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

### What Is ADR?
ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR
- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR
- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR and litigation and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR:

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may <u>not</u> be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

## How to Arrange Mediation in Los Angeles County

Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Case Manager Elizabeth Sanchez, elizabeth@adrservices.com 949.863.9800
   - **JAMS, Inc.** Reggie Joseph, RJoseph@jamsadr.com (310) 309-6209
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org 833.476.9145

**These organizations cannot accept every case and they may decline cases at their discretion. They may** offer online mediation by videoconference for cases they accept. Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

**NOTE: The Civil Mediation Vendor Resource List program does not accept family law, probate or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs**
   https://hrc.lacounty.gov/wp-content/uploads/2020/05/DRP-Fact-Sheet-23October19-Current-as-of-October-2019-1.pdf

   Day of trial mediation programs have been paused until further notice.

   **Online Dispute Resolution (ODR).** Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

**3. Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

**4. Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/C10047.aspx

Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/C10109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

LASC CIV 271 Rev. 03/21
For Mandatory Use

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>04/07/2021<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ N. Alvarez _____ Deputy |
| NOTICE OF CASE ASSIGNMENT<br><br>UNLIMITED CIVIL CASE | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>21STCV13152 |

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✔ | Malcolm Mackey | 55 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 04/07/2021
  (Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By N. Alvarez _____, Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**DEPARTMENT OF HEALTH & HUMAN SERVICES**                    Office of the Secretary

The General Counsel
Washington, D.C. 20201

August 14, 2020

Thomas Barker
Foley Hoag LLP
1717 K Street, N.W.
Washington, DC 20006-5350

Dear Mr. Barker:        / M,

Thank you for your July 20, 2020 letter seeking confirmation that senior living communities are "covered persons" under the Public Readiness and Emergency Preparedness Act, 42 U.S.C. § 247d-6d, (the PREP Act) when performing certain functions during this declared emergency.

For the reasons set forth below, we conclude that senior living communities are "covered persons" under the PREP Act when they provide a facility to administer or use a covered countermeasure in accordance with the Secretary's March 10, 2020 Declaration under the PREP Act. *See* 85 Fed. Reg. 15,198 (March 17, 2020) (Declaration).[1]

Under the PREP Act and the Declaration, "covered persons," when used with respect to the administration or use of a covered countermeasure, "include manufacturers, distributors, program planners, and qualified persons, and their officials, agents, and employees." *Id.* at 151,199; *see also* 42 U.S.C. § 247d-6d(i)(2). The statute defines "program planner" as a

> State or local government, including an Indian tribe, a person employed by the State or local government, or other person who supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with a declaration under subsection (b).

42 U.S.C. § 247d-6d(i)(6).

---

[1] This letter addresses only whether senior living communities can be "covered persons." To receive PREP Act immunity, the covered person must satisfy other requirements of the PREP Act and the Secretary's declaration under the Act.

Thomas Barker
August 14, 2020
Page 2

The Declaration incorporates this definition, and its preamble explains that a program planner can be a "private sector employer or community group" that "carries out the described activities." 85 Fed. Reg. at 15,201. Thus, a senior living community meets the definition of a "program planner" to the extent that it supervises or administers a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including by "provid[ing] a facility to administer or use a Covered Countermeasure in accordance with" the Declaration.

This letter sets forth the current views of the Office of the General Counsel.[2] It is not a final agency action or a final order. Nor does it bind HHS or the federal courts. It does not have the force or effect of law.[3]

Sincerely yours,

Robert P. Charrow
General Counsel

---

[2] *See Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 647-48 (6th Cir. 2004) (holding that the Chief Counsel of the National Highway Traffic Safety Administration had delegated authority to issue advisory opinions to regulated entities in fulfillment of a congressional directive to promote regulatory compliance); 5 U.S.C. § 301 ("The head of an executive department . . . may prescribe regulations for the government of his department, the conduct of its employees, [and] the distribution and performance of its business[.]").

[3] It is possible that a senior living community could also be a "qualified person." Under the PREP Act, "qualified person" includes a "person within a category of persons so identified in" a PREP Act declaration. 42 U.S.C. § 247d-6d(i)(8). The Declaration defined "qualified person" to include "[a]ny person authorized in accordance with the public health and medical emergency response of the Authority Having Jurisdiction…to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures, and their officials, agents, employees, contractors, and volunteers." 85 Fed. Reg. at 15,201-15,202. To the extent a senior living community were so authorized, it could be a qualified person.



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

**Guidance**
Office of the Secretary

Office of the Assistant Secretary for Health
Washington, D.C.  20201

U.S. Department of Health & Human Services
Office of the Assistant Secretary for Health
August 31, 2020

### Guidance for PREP Act Coverage for COVID-19 Screening Tests at Nursing Homes, Assisted-Living Facilities, Long-Term-Care Facilities, and other Congregate Facilities

On January 31, 2020, the Secretary of Health and Human Services declared that the 2019 novel coronavirus (COVID-19) is a public-health emergency for the United States.[1]  The United States Department of Health and Human Services (HHS) is the lead agency for the federal government's response to the COVID-19 pandemic.

A key component of that response is rapidly expanding COVID-19 testing across America.  Within HHS, the Office of the Assistant Secretary for Health leads federal efforts to support that expansion.  Enhancing the safety of nursing homes, assisted-living facilities, long-term-care facilities, and other facilities where people congregate to receive care or education or to work (collectively, "congregate facilities") is critical for our Nation's response to the COVID-19 pandemic.  Testing for COVID-19, including those who are asymptomatic, is a key part of that effort.[2]

---

[1] The Secretary's declaration of a public health emergency was retroactively effective on January 27, 2020.

[2] *See, e.g.*, Interim SARS-CoV-2 Testing Guidelines for Nursing Home Residents and Healthcare Personnel, available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/nursing-homes-testing.html (last visited Aug. 29, 2020) (explaining that, in addition to nursing homes, "testing residents with signs or symptoms of COVID-19 and testing asymptomatic close contacts should also be applied to other long-term care facilities (e.g., assisted living facilities, intermediate care facilities for individuals with intellectual disabilities, institutions for mental disease, and psychiatric residential treatment facilities)"); Testing in Institutions of Higher Education, available at https://www.cdc.gov/coronavirus/2019-ncov/community/colleges-universities/ihe-testing.html (last visited Aug. 29, 2020) ("In areas with moderate to substantial community transmission where resources allow, local health officials and [institutions of higher learning] may consider testing some or all asymptomatic students, faculty, and staff who have no known exposure (e.g., students in congregate housing such as residence halls) to identify outbreaks and inform control measures."); Testing asymptomatic individuals without known or suspected exposure to SARS-CoV-2 for early identification in special settings, available at https://www.cdc.gov/coronavirus/2019-ncov/community/organizations/testing-non-healthcare-workplaces.html#testing-3 (last visited Aug. 29, 2020) ("Viral testing of workers without symptoms may be useful to detect COVID-19 early and stop transmission quickly, particularly in areas with moderate to substantial community transmission.").

Both the Food and Drug Administration (FDA) and the Centers for Medicare & Medicaid Services (CMS) have issued guidance and provided other information regarding screening asymptomatic individuals, including in congregate settings.

According to FDA,

> For health care providers who are ordering an authorized SARS-CoV-2 diagnostic test to be used off-label (outside the authorization) to screen asymptomatic individuals not suspected of having COVID-19, we recommend they consider the information below.  Although the current available literature suggests that symptomatic individuals with COVID-19 and asymptomatic individuals without known exposure may have similar levels of viral genetic material, there is limited data on the distribution of viral loads in individuals with and without symptoms across demographics, different settings, and specimen types.  Therefore, when screening asymptomatic individuals, health care providers should consider using a highly sensitive test, especially if rapid turnaround times are available.  If highly sensitive tests are not feasible, or if turnaround times are prolonged, health care providers may consider use of less sensitive point-of-care tests, even if they are not specifically authorized for this indication (commonly referred to as "off-label").  For congregate care settings, like nursing homes or similar settings, repeated use of rapid point-of-care testing may be superior for overall infection control compared to less frequent, highly sensitive tests with prolonged turnaround times.[3]

CMS has concluded that

> [it] requires facilities with a CLIA Certificate of Waiver to follow the manufacturer's instructions (Instructions For Use) when performing laboratory testing.  The FDA has granted Emergency Use Authorizations (EUA) to certain antigen tests for testing specimens from individuals who are suspected of COVID-19 by their healthcare provider within a number of days after the onset of symptoms, specific to each authorized test's validated performance.  The FDA has provided recommendations for health care providers who are ordering authorized tests outside their authorization (e.g., antigen tests for asymptomatic individuals)— see FDA's FAQ on Testing for SARS-CoV-2 ("Q: Does the FDA have recommendations for health care providers using SARS-CoV-2 diagnostic tests for screening asymptomatic individuals for COVID-19?") for further information.
>
> CMS will temporarily exercise enforcement discretion for the duration of the COVID-19 public health emergency under CLIA for the use of SARS-CoV-2 POC antigen tests on asymptomatic individuals.  Specifically, CMS will not cite facilities with a CLIA Certificate of Waiver when SARS-CoV-2 POC antigen tests are performed on asymptomatic individuals, as described in the FDA FAQ.[4]

Therefore, as an Authority Having Jurisdiction under the Secretary's March 10, 2020 declaration under the Public Readiness and Emergency Preparedness Act (PREP Act),[5] Assistant Secretary for

---

[3] General FAQs, Q: Does the FDA have recommendations for health care providers using SARS-CoV-2 diagnostic tests for screening asymptomatic individuals for COVID-19?, available at https://www.fda.gov/medical-devices/coronavirus-covid-19-and-medical-devices/faqs-testing-sars-cov-2#general, (last visited Aug. 29, 2020).

[4] What is CMS's policy regarding laboratories performing antigen tests authorized by the Food and Drug Administration (FDA) under an Emergency Use Authorization (EUA) for use at the point of care (POC) or in patient care settings operating under a Clinical Laboratory Improvement Amendments of 1988 (CLIA) Certificate of Waiver on asymptomatic individuals?, available at https://www.cms.gov/files/document/clia-poc-ag-test-enforcement-discretion.pdf (last visited Aug. 29, 2020).

[5] Declaration Under the Public Readiness and Emergency Preparedness Act for Medical

Health, Admiral Brett P. Giroir, M.D., extends coverage under the PREP Act to licensed health-care practitioners prescribing or administering point-of-care COVID-19 tests, using anterior nares specimen collection or self-collection, for screening in congregate facilities across the Nation. Such tests must be authorized, approved, or cleared by the FDA (collectively, FDA-authorized COVID-19 tests).

PREP Act coverage encompasses licensed health-care practitioners prescribing or administering FDA-authorized COVID-19 tests, including for off-label (outside the authorization) use to screen asymptomatic individuals in congregate facilities.[6]

In addition to the requirements set forth herein, licensed health-care practitioners must comply with the requirements of the PREP Act and the conditions of the Secretary's declaration under the PREP Act in order to receive PREP Act coverage.[7]

This PREP Act coverage preempts any State or local provision of law or legal requirement that prohibits or effectively prohibits such licensed health-care practitioners from administering or prescribing FDA-authorized COVID-19 tests to symptomatic or asymptomatic individuals at congregate facilities.[8]

---

Countermeasures Against COVID–19, 85 Fed. Reg. 15,198 (Mar. 17, 2020).

[6] FDA determines the scope of on-label authorization.

[7] *See, e.g.*, Advisory Opinion on the Public Readiness and Emergency Preparedness Act and the Secretary's Declaration under the Act, available at https://www.hhs.gov/sites/default/files/prep-act-advisory-opinion-hhs-ogc.pdf (last visited Aug. 29, 2020).

[8] *See, e.g.*, Advisory Opinion 20-02 on the Public Readiness and Emergency Preparedness Act and the Secretary's Declaration under the Act, available at https://www.hhs.gov/sites/default/files/advisory-opinion-20-02-hhs-ogc-prep-act.pdf (last visited Aug. 29, 2020).

**DEPARTMENT OF HEALTH & HUMAN SERVICES**                    Office of the Secretary

_____

The General Counsel
Washington, D.C. 20201

# ADVISORY OPINION 21-01 ON THE
# PUBLIC READINESS AND EMERGENCY PREPAREDNESS ACT
# SCOPE OF PREEMPTION PROVISION
# JANUARY 8, 2021

Following the issuance by the Secretary on December 3, 2020, of the Fourth Amendment to his Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, we have received questions as to whether the PREP Act applies where a covered person declined to use a covered countermeasure when it arguably ought to have been used.[1]  *See* 85 Fed. Reg. 79,190 (Dec. 9, 2020).  These inquiries were stimulated, as we understand, by a spate of recent lawsuits, most involving nursing homes and other healthcare facilities, where patients or their estates allege that patients contracted COVID-19 because the facility, among other things, failed to provide its staff with personal protective equipment ("PPE"), failed to teach the staff how to properly use that equipment, or failed to ensure that its staff used the PPE that it had been given.  This Advisory Opinion addresses these questions in the context of our administration of the PREP Act and the Secretary's PREP Act Declaration, as amended.

## I.      Analysis

There has been a growing number of suits related to the use or non-use of covered countermeasures against COVID-19, including PPE.  These cases tend to be filed in state courts alleging a variety of state law-based torts.  In this "jurisprudential Kabuki dance" (*Maine Public Utilities Com'n v. F.E.R.C*., 625 F.3d 754, 758 (D.C. Cir. 2010)), defendants file removal petitions and plaintiffs respond with remand motions.  To resolve the remand motions, courts first assess whether the doctrine of complete preemption applies.  Ordinary preemption is a defense and does not support Article III subject matter jurisdiction (usually under 28 U.S.C. § 1331), a prerequisite for removal.  *See Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804 (1986).  In contrast, complete preemption is "really a jurisdictional rather than a preemption doctrine, [as it] confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Marin General Hosp. v. Modesto & Empire Traction Co*., 581 F.3d 941, 945 (9th Cir. 2009) (quoting *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund,* 538 F.3d 594, 596 (7th Cir. 2008) (internal quotations omitted).  Relatively few statutes completely preempt.

_____

[1]      The PREP Act is the Public Readiness and Emergency Preparedness Act, Pub. L. No. 109-148, div. C, § 2, 119 Stat. 2818 (Dec. 30, 2005), codified at 42 U.S.C. §§ 247d-6d, 247d-6e. It has been amended through the Pandemic and All-Hazards Preparedness Reauthorization Act of 2013, Pub. L. No. 113–5, title IV, § 402(g)(2), (3), 127 Stat. 196 (Mar. 13, 2013) and further amended by § 6005 of the Families First Coronavirus Response Act, Pub. L. No. 116-127, 134 Stat. 177 (March 18, 2020) and § 3103 of the Coronavirus Aid Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (March 27, 2020).

## A.      The PREP Act is a "Complete Preemption" Statute

The Supreme Court first articulated the doctrine of complete preemption as a basis for federal question removal jurisdiction under 28 U.S.C. § 1441(a) in *Avco Corp. v. Aero Lodge No. 735, Intern. Ass'n of Machinists and Aerospace Workers*, 390 U.S. 557, 559 (1968) (holding that the Labor Management Relations Act, 1947 completely preempted state court jurisdiction). Thereafter, the doctrine was extended to the Employee Retirement Income Security Act of 1974 in 1987, the National Bank Act in 2003, and the Air Transportation Safety and System Stability Act in 2005.  *See Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58 (1987) (ERISA completely preempts state law); *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004) (the same); *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7–11 (2003) (National Bank Act completely preeempts); *In re WTC Disaster Site*, 414 F.3d 352, 375 (2d Cir. 2005) (Air Transportation Safety and System Stability Act completely preempted state claims and ousted state courts of jurisdiction by creating an exclusive federal cause of action).  The *sine qua non* of a statute that completely preempts is that it establishes either a federal cause of action, administrative or judicial, as the only viable claim or vests exclusive jurisdiction in a federal court.  The PREP Act does both.

Once complete preemption attaches, the district court is usually obligated to dismiss the case as pleaded, either because no federal cause of action is alleged or the exclusive initial venue is a federal administrative agency.

All that is well and good, but it does not address the issue that appears to have perplexed district courts, namely when is the PREP Act triggered.  District courts appear to have labored hard attempting to ordain whether the non-use of a covered countermeasure triggers the PREP Act and its complete preemption regime.  At one extreme, plaintiff may have pleaded that the facility failed *in toto* to provide any of its staff or patients with any PPE, a covered countermeasure if NIOSH approved or FDA cleared or waived.  Other plaintiffs allege that the quantity of PPE was inadequate, that staff were not timely provided PPE or that staff were not adequately trained to use PPE.  The latter three complaints reflect many of the complaints that we have reviewed.

The PREP Act's immunity provision, which triggers exclusive federal jurisdiction, states as follows:

> Subject to the other provisions of this section, a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, <u>relating to</u>, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure.

Public Health Service Act § 319F-3(a)(1), 42 U.S.C. § 247d-6d(a)(1) (emphasis supplied).

The PREP Act goes on to provide that its immunity

> applies to any claim for loss that has a causal relationship with the administration to or <u>use</u> by an individual of a covered countermeasure, including a causal

2

relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or <u>use</u> of such countermeasure.

*Id*. at § 319F-3(a)(2)(B), 42 U.S.C. § 247d-6d(a)(2)(B) (emphasis supplied).

Some district courts have interpreted the scope of the immunity in subparagraph (B) as requiring "use." Under this view, if a covered countermeasure were not used, then there is no PREP Act immunity. According to one court, "[t]here is simply no room to read [the PREP Act] as equally applicable to the non-administration or non-use of a covered countermeasure." *Lutz v. Big Blue Healthcare, Inc*., ___F. Supp. 3d ___, 2020 WL 4815100, at *8 (D. Kan. 2020) (emphasis in original) (granted remand motion).

However, this "black and white" view clashes with the plain language of the PREP Act, which extends immunity to anything "relating to" the administration of a covered countermeasure. For example, consider a situation where there is only one dose of a COVID–19 vaccine,[2] and a person in a vulnerable population and a person in a less vulnerable population both request it from a healthcare professional. In that situation, the healthcare professional administers the one dose to the person who is more vulnerable to COVID–19. In that circumstance, the failure to administer the COVID–19 vaccine to the person in a less-vulnerable population "relat[es] to . . . the administration to" the person in a vulnerable population. The person in the vulnerable population was able to receive the vaccine only because it was not administered to the person in the less-vulnerable population. Prioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections. There can potentially be other situations where a conscious decision not to use a covered countermeasure could relate to the administration of the countermeasure. In contrast, the failure to purchase any PPE, if not the outcome of some form of decision-making process may not be sufficient to trigger the PREP Act.

Where a facility has been allocated a scarce therapeutic purchased by the federal government and that facility fails to administer that therapeutic to an individual who meets the requirements of the FDA's authorization, approval, or license, and whose physician prescribes that therapeutic, then the facility's refusal to administer that therapeutic could still trigger the PREP Act assuming the non-use of the therapeutic was the result of conscious decision-making. However, the facility may still be liable under the PREP Act, if the plaintiff alleges that the decision to deny him or her the therapeutic was wanton and willful and resulted in death or serious injury. *See* 42 U.S.C. § 247d-6d(d)-(e). Such a case would be transferred to the District Court for the District of Columbia for resolution by a three-judge panel. The facility may also be subject to a federal enforcement action.

---

[2] For simplicity, this example assumes a patient only requires one dose of the vaccine.

3

The language of the PREP Act itself supports a distinction between allocation which results in non-use by some individuals, on the one hand, and nonfeasance, on the other hand, that also results in non-use.

Included within the set of "covered persons," *i.e.*, those entitled to immunity, are "program planners."  42 U.S.C. § 247d-6d(i)(2)(B)(iii).  A "program planner" is

> a State or local government, including an Indian tribe, a person employed by the State or local government, or other person who supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with a declaration under subsection (b).

*Id.* at § 247d-6d(i)(6).

A program planner is someone who is involved in providing or allocating covered countermeasures.  Program planning inherently involves the allocation of resources and when those resources are scarce, some individuals are going to be denied access to them.  Therefore, decision-making that leads to the non-use of covered countermeasures by certain individuals is the grist of program planning, and is expressly covered by PREP Act

There are going to be circumstances where plaintiff pleads that defendant's culpability is the result of its failure to make any decisions whatsoever, thereby abandoning its duty to act as a program planner or other covered person.  Although this is a small hole through which to wiggle to avoid complete preemption, we are confident, were it not for two legal constraints, that it would grow as plaintiffs become more adept at fashioning their pleadings.  However, "complete preemption . . . functions as an exception to the well-pleaded complaint rule."  *Giles v. NYLCare Health Plans*, *Inc*., 172 F.3d 332, 336 (5th Cir. 1999).  Thus, federal courts are free to entertain discovery to ascertain, for jurisdictional purposes, the facts underlying the complaint.  *See United Surgical Assistants, LLC v. Aetna Life Ins. Co.*, 2014 WL 4059889, at *1 (M.D. Fla. Aug. 14, 2014) (allowing jurisdictional discovery on whether plaintiff's claim was completely preempted by ERISA).

**B.      Fourth Amendment to the Secretary's Declaration Supports the *Grable* Doctrine**

In addition to complete preemption as the basis for article III jurisdiction and removal, the Court recognized a separate doctrine in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg*., 545 U.S. 308 (2005).  Under *Grable*, even in the absence of a claim arising under federal law, "a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg*., 545 U.S. 308, 312 (2005) (emphasis supplied).  Thus, a substantial federal question is implicated, for example, where "the

interpretation of a federal statute [ ] actually is in dispute in the litigation and is so important that it sensibly belongs in federal court." 545 U.S. at 315.  Here, ordaining the metes and bounds of PREP Act protection in the context of a national health emergency necessarily means that the case belongs in federal court.  The Secretary, in his Fourth Amendment to his PREP Declaration, similarly concluded, when he stated that

> [t]here are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005), in having a unified, whole-of-nation response to the COVID–19 pandemic among federal, state, local, and private-sector entities.

85 Fed. Reg. at 79,197 (col. c).

*See also* 42 U.S.C. § 247d-6d(b)(7) ("No court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under this subsection.").  As such, the secretarial determination provides the underlying basis for invoking the *Grable* doctrine with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure.  Once invoked, the court retains the case to decide whether the immunity and preemption provisions apply; if they do not apply, then the court would try the case as it would a diversity case.  If the court finds, though, that the PREP Act applies, it would dismiss the case or if death or serious physical injury proximately caused by willful misconduct is alleged, transfer it to the District Court for the District of Columbia.  *See* 42 U.S.C. § 247d-6d(d)-(e).

## II.      Limitations

This Advisory Opinion may be supplemented or modified. It is intended to minimize the need for individual advisory opinions.  This Advisory Opinion sets forth the current views of the Office of the General Counsel.[3]  It is not a final agency action or a final order. It does not have the force or effect of law.

*Robert P. Charrow*

Robert P. Charrow
General Counsel
January 8, 2021

---

[3]      *See Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 647–48 (6th Cir. 2004) (holding that the Chief Counsel of the National Highway Traffic Safety Administration had delegated authority to issue advisory opinions to regulated entities in fulfillment of a congressional directive to promote regulatory compliance); 5 U.S.C. § 301 ("The head of an executive department . . . may prescribe regulations for the government of his department, the conduct of its employees, [and] the distribution and performance of its business[.]"); *Statement of Organization, Functions, and Delegations of Authority*, 85 Fed. Reg. 54,581, 54,583 (Sept. 2, 2020).